[No. 35962. Department One. July 19, 1962.]

MIKE DONOVICK et al., *Respondents*, v. GLENN ANTHONY et al., *Appellants.**

*Parker & Parker*, for appellants.

*Manley & Kirkwood*, for respondents.

WEAVER, J.—A jury returned a verdict in favor of defendants Glenn Anthony and wife, who appeal from an order granting a new trial.

April 8, 1959, plaintiffs Mr. and Mrs. Donovick stopped their half-ton Chevrolet pickup truck at an intersection in response to a traffic stoplight. A logging truck struck the rear of plaintiffs' truck. The damage to the trucks was minimal.

Mrs. Donovick suffered a whiplash injury and, about 10 days after the accident, a miscarriage. This action for damages is based on these injuries.

*Reported in 373 P. (2d) 488.

After the accident, it was discovered there had been a break in the hydraulic brake system, causing the brake fluid to escape, leaving the truck without a footbrake.

Frank Gold, the driver of the logging truck, testified that, as he approached the plaintiffs' vehicle from the rear, he endeavored to stop his truck by depressing the pedal of the footbrake. "There were no brakes." While shifting from third to first gear, he collided with plaintiffs' truck.

"Q. Did you attempt to put on the emergency brake? A. No, I was just—when I went for the foot brakes like that, I was just startled. I mean the first thing that I thought of was shifting down the gears. Q. *There was an emergency brake on the truck?* A. *Yes Sir.* Q. *It was working?* A. *Yes Sir.* Q. *Did you have time to use it, to grab the emergency brake?* A. *I probably could if I had thought of it right away.*" (Italics ours.)

He further testified that he checked the brakes every morning; that he had checked them the day of the accident; that they were in good order until the time of the accident.

The record is nebulous as to the exact status of ownership of the logging truck at the time of the accident. Defendant Anthony testified he owned the truck and took income tax depreciation on it "up until the truck was transferred."

Some time prior to the accident, Ernest Bodnar, stepfather of the logging truck driver, worked for defendant Anthony.

Several months prior to the accident (the date is not fixed by the record), defendant Anthony placed the logging truck in the possession of Bodnar, pursuant to an oral "arrangement": Bodnar was to haul logs for defendant at a stipulated price per thousand; the truck was to be maintained by Bodnar; and, after deduction of operating expenses and repairs, the balance was to be applied to the purchase price of the truck. Mr. Bodnar testified he received a bill of sale for the truck on May 8, 1959.

Frank Gold testified that, about three months before the accident, defendant Anthony asked him to drive the logging truck—Bodnar was in the hospital at the time.

It is undisputed that Anthony did not pay Gold, who received room, board, and spending money from Bodnar, his stepfather.

During the "arrangement" period, at least, Gold kept the truck at his parents' house at night.

Two invoices of the Whitney Oldsmobile Company charged logging truck repairs totaling $707.56 to Bodnar. The first invoice for $615.12, dated March 19, 1959—three weeks before the accident—included the price of a new engine and the notation "check hydrovac," an integral part of the hydraulic brake system. The second invoice for $92.44, dated April 8, 1959—after the accident—was for repairs to the logging truck's hydraulic brake system. Any repairs not billed to Bodnar were charged to Anthony and deducted as operating expenses from the earnings of the truck. An accounting with defendant Anthony was usually made every Friday night.

This action was commenced against defendant Anthony and wife, and Frank Gold, described in the second amended complaint as a ". . . loaned employee and under the exclusive direction and control of the defendant Glenn Anthony . . ." Mr. and Mrs. Bodnar have never been parties to this action.

Upon plaintiffs' motion, made several days before trial, Frank Gold was dismissed with prejudice as a party defendant, thus leaving Mr. and Mrs. Anthony the only defendants.

On at least three occasions, defendant Anthony testified that in December, 1958, he had completely rebuilt the hydraulic brake system on the logging truck, including installation of new wheel cylinders, new brake lining, and new brake drums. He did this ". . . about three or four months prior to the accident." After cross-examination of Anthony, plaintiff produced a hydraulic brake expert as a rebuttal witness.

The crux of this case is found in jury instruction No. 8, to which neither party took exception; it became, therefore, the law of the case. The instruction stated:

"In this case, any negligence on the part of Frank Gold

in the operation of the log truck which collided with the Plaintiffs' pickup can not be charged against the Defendants, Glenn Anthony and his wife.

"If you find by a preponderance of the evidence that the sole, proximate cause of the collision was some act of negligence on the part of Frank Gold, the driver, then your verdict shall be in favor of the defendants.

"In order for the Plaintiffs to recover against the Defendants, you must find by a preponderance of the evidence that the Defendants were negligent in the maintenance and upkeep of the brakes on the logging truck and that this negligence, if any, was a proximate cause, or one of the proximate causes, of the collision."

November 1, 1960, the jury returned a general verdict for defendants Anthony. The jury may have found (1) that Frank Gold, the driver of the truck, was negligent, for he could have stopped the truck and avoided the accident by applying the emergency brake (Under instruction No. 8, quoted *supra*, his negligence could ". . . not be charged against defendants."); that (2) defendant Anthony was not negligent in the maintenance and upkeep of the hydraulic brake system on the logging truck; or (3) that defendant Anthony's negligence, if any, was not the proximate cause of the accident. The record does not disclose the theory upon which the jury based its verdict.

November 25, 1960, 22 days after the motion for new trial was filed, an affidavit signed by plaintiff Mildred Donovick was filed in support of the motion. Defendants moved to quash the affidavit. An extension of time had not been requested, and the affidavit had not been timely served and filed—within two days after service of the motion—as required by RCW 4.76.060

The motions for a new trial and to quash the affidavit of Mrs. Donovick were presented to the court December 9, 1960. At the time of the hearing, plaintiffs presented the affidavit of Mrs. Bodnar, a witness for plaintiffs at the trial.

The affidavits of Mrs. Donovick and Mrs. Bodnar state that after the trial Mr. Anthony said he had been mis-

taken; that he had not overhauled the hydraulic brake system of the truck involved in the accident, but had overhauled the brake system of another truck owned by him. Further, Mrs. Donovick's affidavit stated that defendant Anthony had admitted

" . . . that said 1952 truck in fact did not even have an emergency brake lever in the cab or the truck or at all; . . ."

thus impeaching the testimony, quoted *supra*, of her own witness, Frank Gold.

Mr. Anthony's controverting affidavit affirms his testimony: that he had completely overhauled the hydraulic brake system of the truck in question as " . . . the truth, the whole truth, and nothing but the truth . . ."; that he had also overhauled the brake system on another truck owned by him,

" . . . but at no time did he ever state that he did not overhaul the brake system on the 1952 truck which was turned over to Mr. Bodnar involved in this accident; That as a matter of fact, he overhauled the brake system on both trucks during the winter shut down the latter part of 1958."

In short, the affidavits of Mrs. Donovick and Mrs. Bodnar only tend to impeach the testimony and credibility of defendant Anthony and, to some extent, a part of the testimony of plaintiffs' own witness, Frank Gold.

A new trial should not be granted, based on affidavits that merely impeach a witness or affect his credibility.

In *Nelson v. Placanica*, 33 Wn. (2d) 523, 526, 206 P. (2d) 296 (1949), this court said:

"To justify granting a new trial on the ground of newly discovered evidence, the following requirements must be satisfied: (1) The new evidence will probably change the result if a new trial is granted. [Citing cases.] (2) It must have been discovered since the trial. (3) It could not have been discovered before the trial by the exercise of diligence. [Citing cases.] (4) It is material to the issue. [Citing cases.] (5) It is not merely cumulative [Citing cases.] or impeaching. [Citing cases.]"

Accord: *Martin v. Foss Launch & Tug Co.*, 59 Wn. (2d) 302, 367 P. (2d) 981 (1962); *Trosper v. Heffner*, 51 Wn. (2d) 268, 317 P. (2d) 530 (1957); *Doss v. Schuller*, 47 Wn. (2d) 520, 288 P. (2d) 475 (1955).

Plaintiffs have not met the requirements of the test announced in the decisions of this court.

The order granting a new trial is reversed and the case is remanded, with instructions to enter judgment on the jury verdict.

FINLEY, C. J., HILL, ROSELLINI, and FOSTER, JJ., concur.