[No. 20-40137-3.   Division Three.   December 31, 1969.]

SIMPSON TIMBER COMPANY, *Respondent*, v. LJUTIC INDUS-
TRIES, INC., *et al., Appellants.*

*J. P. Tonkoff* (of *Tonkoff & Dauber*), for appellants.

*Alan A. McDonald* (of *Halverson, Applegate & Mc-
Donald*), for respondent.

GREEN, J.—Plaintiff, Simpson Timber Company, brought
this action against defendants for $5,032.36 claimed due

on an open account from the sale of industrial fiber-board. Defendants, Ljutic Industries, Inc. and the company's president, Albert Ljutic, answered and counterclaimed alleging, among other things, that the fiberboard when sold and delivered was highly inflammable and unfit for the use intended; it was so warm when packaged that it continued heating until spontaneous combustion occurred, causing a fire that destroyed defendants' plant and thereby damaged defendants in excess of $250,000; and that plaintiff should have warned defendants of this propensity, but no warning was given. The jury returned a verdict for the full amount of plaintiff's claim. After being denied a motion for new trial, defendants appeal.

Pertinent portions of the record disclose that in 1962, near Reno, Nevada, Mr. Ljutic constructed a manufacturing plant of basic wooden structure for specialty manufacturing of shotguns and components for loading shells. The plant included attached living quarters, a tool room, machine shop, and a warehouse. In the southwest corner of the warehouse was the wad department containing a metal pot for melting wax and nearby stacks of fiberboard of variable thickness (.375 to .875 inches). Defendants would immerse the fiberboard in molten wax, cool it and then run it through a punch press leaving the board with a series of donut-like holes. The punched out portion, called mono-wad or Ljutic wad was again immersed in the wax bath to give it rigidity so that it could be placed behind the shot in a shotgun shell.

A nearby plant where defendants purchased fiberboard prior to 1962 went out of business so defendant, after examining a sample of the fiberboard manufactured by plaintiff, began buying from them. Plaintiff's fiberboard was essentially the same as that previously purchased by defendants. Although defendants' purchases were taken from regular production run industrial board, it was agreed that plaintiff would supply the board under the trade name of "Ljutic Board." Purchases commenced in 1962 and continued through the date of the fire. Shipments were made

by truck from plaintiff's plant at Shelton, Washington to defendants' plant at Reno. Upon arrival, the Ljutic Board, packaged in heavy craft paper, was unloaded and stacked to the ceiling in defendants' warehouse.

On October 12 or 13, 1964, defendants were short of fiberboard. Mr. Ljutic placed an order by telephone and was advised the order would be made up immediately. The shipment involved in defendants' counterclaim was taken from a run that began on October 14 and was completed about 12:30 p.m. on the same day and then stacked in the warehouse. The midnight shift on October 15 took the board from the warehouse and caused it to be planed, cut to desired sizes, and packaged. They then restacked the board. On the morning of October 16, the shipment was loaded in a van truck and transported to the defendants, arriving at their plant on October 18. The shipment to defendants comprised about one-third of this production run; the balance remained, without incident, in plaintiff's warehouse up to and through the date of the trial.

At about 5:30 a.m. on October 28, 1964, two passers-by who observed the smoke from the state highway informed Mr. Ljutic of the fire. Immediate efforts were made to extinguish it but all efforts, including those of the fire department, were unsuccessful.

The evidence shows a sharp difference of opinion between the experts called by the defendants and the plaintiff on the issue of spontaneous combustion raised by defendants' counterclaim. In addition, plaintiff produced as witnesses Battalion Chief Don Young and arson investigator Pat Drescher who testified about fighting the fire and their subsequent investigation. They examined the piles of fiberboard after they had been moved around and found no evidence the fiberboard piles had burned from the inside out as they would have if the fire were inspired by spontaneous combustion. In their opinion, the fire started in the area of deepest char near the wax pot where a short circuit was located.

Following an extensive trial, the jury returned a verdict awarding plaintiff a judgment on its open account and denying any relief to defendants upon their counterclaim. From this judgment defendants appeal.

First, defendants assert error in the giving of instruction No. 1 because it failed to present their contention that the fiberboard was unfit for the purpose they purchased it, in that it did not absorb wax as did previous shipments, and therefore they should not be required to pay for it. Additional error is claimed in refusing to give defendants' proposed instruction No. 2 wherein defendants contend the issues were properly stated. The pertinent part of the proposed instruction No. 2 states:

By way of answer, the defendant, Ljutic Industries, Inc. admits that it received the industrial board and roof insulation but denies it should pay for the same. The defendant, Ljutic Industries, Inc., counter-claims against the plaintiff alleging, in substance, that the industrial board or roof insulation was specially manufactured by the plaintiff for the defendant, Ljutic Industries, Inc., under the trade name of "Ljutic Board."

That the Ljutic Board manufactured on the 14th day of October, 1964 and shipped to Ljutic Industries, Inc., on the morning of October 16, 1964, and received by Ljutic Industries, Inc. on the morning of October 18, 1964, was not fit for the purpose for which it was purchased by defendant, Ljutic Industries, Inc. and further, Simpson Timber Company negligently failed to properly cool and prepare the board for shipment made on October 16, 1964, so subsequently when stacked it contained or acquired dangerous propensities toward spontaneous combustion.

Although defendants presented some evidence in support of the theory of unfitness because of the failure to absorb wax, it was not specially alleged as a defense in defendants' answer and counterclaim.

■ Proposed instruction No. 2 is the only instruction proposed by defendants on behalf of this theory. It is a general statement of the issues and contentions of each party. An allusion to the issue was made in defendants'

proposed instruction No. 16 on damages. Perusal of all of the instructions requested by defendants fails to reveal any jury instruction setting forth the law or standard to be followed by the jury in determining whether the fiberboard was satisfactory for the purpose for which it was purchased. If defendants desired to submit this theory of fitness to the jury, it was incumbent upon them to propose requested instructions that not only stated the issue, but defined the law applicable to a determination of that issue. *Provins v. Bevis,* 70 Wn.2d 131, 139, 422 P.2d 505 (1967); *Brammer v. Lappenbusch,* 176 Wash. 625, 635, 30 P.2d 947 (1934); *Ogilvie v. Hong,* 175 Wash. 209, 212, 213, 27 P.2d 141 (1933); *Hiscock v. Phinney,* 81 Wash. 117, 123, 142 P. 461 (1914).

After reading proposed instruction No. 2, we doubt whether the issue was requested with sufficient clarity to have apprised the jury of its existence. The emphasis of that instruction is directed to the issue of spontaneous combustion. In any event, the mere stating of the issue without requesting an instruction defining the law applicable to the issue is not sufficient. Having failed to propose an instruction to the jury as to the law applicable to the issue of fitness, there was no error in the court's failing to include the issue in instruction No. 1 as given.

■ Second, defendants claim error in the giving of instructions on the issue of their alleged contributory negligence. (Instructions No. 1 and 7.) Only in rare cases is the court justified in withdrawing the issue of contributory negligence from the jury. When there is substantial evidence upon which reasonable minds could differ as to whether the defendant was contributorially negligent, the issue should be submitted to the jury. *Bohnsack v. Kirkham,* 72 Wn.2d 183, 191, 432 P.2d 554 (1967) and cases cited therein.

Mr. Ljutic testified that the shipment when received on October 18 was so warm that the workmen were forced to remove their shirts in the truck and were required to use

gloves to handle the board. Defendants' former employee, Ralph Aldous, who participated in unloading the fiberboard, contradicts these facts and testified that if it had been hot " . . . we would never have put it in, in the first place." Mr. Ljutic claimed he knew the board was warm but denied any knowledge of the risk of harm flowing therefrom; but the board remaining after the manufacture of mono-wads was coated with wax, packaged and sold by Mr. Ljutic as fire starters. From these facts, the jury was entitled to consider whether Mr. Ljutic knew or should have known the characteristics of the material he was handling and selling. This created an issue for the jury.

Alec Jackson, an expert witness, testified if the board had been held in Mr. Ljutic's warehouse at an ambient room temperature of 228°F. for 96 hours, a fire could possibly have occurred. Nealley Wood, an expert witness, testified that had spontaneous combustion been occurring as claimed by the defendants, some odor would have been given off unless it were masked by the fumes from the wax pot. Since Mr. Ljutic and his employees were in and out of the warehouse every day between October 18 and October 28, the date of the fire, a jury question was presented on the issue of whether in the exercise of reasonable care defendants should have discovered the alleged developing condition in time to have prevented the fire.

Considering the record as a whole, we believe the trial court properly submitted the issue of contributory negligence.

Third, defendants claim the trial court erred in denying appellants' motion for a new trial. Defendants' motion was based upon facts disclosed in the testimony of Battalion Fire Chief Young and arson investigator Drescher of the Sparks City Fire Department.

■ With respect to their testimony, defendants assert an agreement existed between plaintiff and defendants' counsel whereby each would submit to the other names of all expert witnesses in advance of trial. It is contended that

plaintiff's failure to submit the names of Young and Drescher violated this agreement. (Despite this claim, the record shows that defendants called George Picatti, an electrical expert, without first notifying plaintiff.) Plaintiff's counsel asserts that such agreement was limited to experts on the issue of spontaneous combustion. Both firemen expressed an opinion as to the cause of the fire without objection by defendants. It was not until after the adverse verdict that defendants claimed surprise. Where a question as to the content of an agreement is not raised or determined before the verdict is rendered, it is not the function or duty of the trial court following trial nor of this court on appeal to factually determine the content of that agreement, based upon conflicting affidavits. At the time Mr. Young and Mr. Drescher testified, defendants could have claimed surprise and asked for a ruling. Having failed to do so, defendants waived their right to claim surprise. *State v. McKenzie,* 56 Wn.2d 897, 355 P.2d 834 (1960); *Sather v. Lindahl,* 43 Wn.2d 463, 261 P.2d 682 (1953).

Testimony of Young and Drescher revealed they found a wire in a beaded condition attached to and 14 feet from the wax pot. In their opinion, the beading of the wire established electricity in it and that the wire had short-circuited. Both testified they removed a thermostat from the wax pot, took the thermostat to the fire station where a continuity test was performed on it, and found it to be in a "closed" position indicating it was "on" at the time of the fire.

Following the adverse verdict, defendants unearthed the wax pot and produced affidavits in support of a motion for a new trial. The affidavits state that John Irwin, who allegedly made the continuity test, said in their presence that he did not recall performing a continuity test on a thermostat but he refused to give a signed statement or affidavit. Except for these hearsay affidavits, there is nothing in the record from Mr. Irwin. Affidavits of George Picatti and Hubert C. Dinter, consulting engineers, were produced.

Their affidavits reveal the control box cover and the control thermostat were missing, but the capillary system with bulb on the interior of the wax pot was intact. Both affidavits state this capillary system is an integral part of the thermostat and is absolutely necessary to make a continuity and operation test of the thermostat.

Defendants contend the only defense against their counterclaim is that the fire was caused by a defective thermostat, resulting in an overheated wax pot. It is contended there is such variance between the testimony of the two firemen and the affidavits supporting the motion for new trial as to amount to perjury by the firemen. The record does not support these contentions. A complete reading of the testimony shows plaintiff met defendants' theory of spontaneous combustion head-on with contradicting, expert opinion testimony that the fire could not have been caused by spontaneous combustion. The jury could have found either way on this issue. The further testimony of the two firemen indicating the cause of the fire to be a short circuit or other cause occurring in the area of the wax pot was incidental. Mr. Drescher testified:

My opinion is that the fire started in the area of the paraffin tank, possibly in the paraffin tank which could have burned up and caused a short in the wiring. However, it is my feeling the wire did short and cause ignition of the fire.

He also testified the area of deepest char indicating the longest burn was in the area of the wax pot and the short-circuited wire. Mr. Young testified "that the fire started in or around the wax pot."

Neither witness testified the thermostat was defective. All the continuity test did, according to their testimony, was to confirm that the wire leading to the wax pot was energized. The same fact was established by the beading of the short-circuited wire.

Our Supreme Court has said:

A motion for new trial upon the basis of newly discovered evidence is addressed to the sound discretion of the

trial court. The trial court's determination upon such motion will not be disturbed on appeal unless it be for an abuse of discretion. [Citing cases.]

*Brown v. General Motors Corp.*, 67 Wn.2d 278, 287, 407 P.2d 461 (1965); *Davenport v. Taylor*, 50 Wn.2d 370, 373, 311 P.2d 990 (1957).

To warrant a new trial on the ground of newly discovered evidence, defendants must show that (1) if a new trial is granted, the evidence is such as *will* probably change the result; (2) it has been discovered since the trial; (3) by the exercise of due diligence it could not have been discovered before the trial; (4) it is material to the issue; and (5) it is not merely cumulative or impeaching. *State v. Gibson*, 75 Wn.2d 174, 449 P.2d 692 (1969); *Donovick v. Anthony*, 60 Wn.2d 254, 373 P.2d 488 (1962).

We are convinced that, in denying the motion for new trial, the trial court did not abuse its discretion. Requirements (1) and (5) were not met. We are unable to find that if a new trial is granted, the alleged newly discovered evidence *will* probably change the result. It is not sufficient that the new evidence *may* lead to a different result. *State v. Peele*, 67 Wn.2d 724, 409 P.2d 663 (1966).

The issue with respect to spontaneous combustion was sharply disputed between the experts. Defendants had the burden of proving the fire was caused by an act or omission of plaintiff. No claim was made of a defective thermostat, so whether a continuity test showing the thermostat to be in an "on" position was conducted or not could have no effect upon the ultimate outcome of the trial. While this court can readily understand that defendants may have used some of the information revealed in their affidavits in cross-examining the two firemen, such use would have been for impeachment only. In such case, defendants would fail to meet the fifth requirement for granting a new trial by reason of newly discovered evidence. *Brown v. General Motors, supra.* In view of our holding, it is unnecessary to discuss whether defendants met their burden on the other requirements.

Fourth, defendants claim error in the admission of certain testimony. Plaintiff's counsel on cross-examination of Woodrow B. Johnson, called as an adverse witness by the defendant, was asked whether in his "21 years of employment by plaintiff [he] had ever heard of any claim or had any basis of knowing of any occasion where Simpson wall board or industrial board ignited or caused any problem of spontaneous combustion." Defendant objected, claiming that plaintiff could not show lack of negligence by showing lack of prior incidents. The trial court cautioned the jury that the answer to the question was not admitted to show absence of negligence, but "goes only to the question of whether or not plaintiff had a duty to label their packages or otherwise . . . warn" purchasers of their product as to its propensity, if any, toward spontaneous combustion. Words of limitation were again included in instruction No. 10. Under these cautionary instructions, no error was committed in allowing the answer. In fact, defendants in their direct examination asked the same question and received an answer but made no motion to strike the answer and by doing so waived their right to later object to the same question when asked by plaintiff. The answer to plaintiff's question was merely cumulative.

On cross-examination, defendants' expert on the issue of spontaneous combustion, Bruce Levelton, a Canadian engineer, was asked whether it was the practice in his country by manufacturers of fiberboard, either voluntarily or because of requirements by Canadian law, to place warnings of the dangers of spontaneous combustion on shipments of fiberboard. Defendants objected on the ground that whether some other nation or manufacturer placed warnings on its shipments was not relevant to the issue of whether the plaintiff in the instant case should have done so. The objection was over-ruled. With this ruling we agree.

■ One of the issues is whether the plaintiff had a duty to warn. Of necessity, the answer to this question

must be predicated upon the knowledge available to the plaintiff with respect to the experience of others in the industry on the issue of spontaneous combustion as well as plaintiff's own experience. Defendant had already introduced testimony showing other incidents of spontaneous combustion in the industry. Plaintiff was properly allowed to show the experience of other manufacturers, including Canadian, on the issue of plaintiff's duty to warn. Where negligence is an issue, the usual conduct or general custom of others under similar circumstances is relevant and admissible on the issue of the plaintiff's duty to warn. 65A C.J.S. *Negligence* § 232 at 638; *Swartley v. Seattle School Dist. 1*, 70 Wn.2d 17, 421 P.2d 1009 (1966).

Since we have found no error in the admission of the answers to the foregoing questions, the trial court did not err in refusing to give defendants' proposed instructions No. 17 and 19. Further, there was no error in refusing to give proposed instruction No. 18. It is an inaccurate statement of the law. It would have prevented the jury from considering the custom of other manufacturers in warning of the dangerous propensities of fiberboard, if any, as it might bear on the foreseeability of the harm in the issue of negligence.

Fifth, defendants claim error in the court's failure to give their proposed instructions 20, 21, 22, 28 and 31, all pertaining to plaintiff's duty to warn. When the instructions given properly cover a party's theory so that he can adequately argue his theory of the case from those instructions, he cannot complain of the failure to give his proposed instructions. *Tyler v. Tyler*, 65 Wn.2d 102, 395 P.2d 1021 (1964). The instructions given allowed defendants to adequately argue this theory of the case.

Sixth, defendants claim error in the failure to give their proposed instruction No. 24. Under this instruction, all defendants needed to prove in order to recover was that the fiberboard, when stacked in the defendants' warehouse, *could* have spontaneously ignited. We disagree. In order for defendants to have recovered on their counterclaim, they

had to prove by a preponderance of the evidence that the fiberboard *did* spontaneously ignite and that the proximate cause of the ignition was the negligence of plaintiff. There was no error in refusing this request.

Last, error is claimed in the failure of the trial court to give defendants' proposed instruction No. 16 and in giving instruction No. 11, both relating to the issue of damages. Since the verdict of the jury was against the defendants on the issue of liability under their counterclaim, it is unnecessary to discuss the issues raised by defendants. *Fleenor v. Erickson,* 35 Wn.2d 891, 215 P.2d 885 (1950).

Judgment is affirmed.

EVANS, C. J., and MUNSON, J., concur.

---

Petition for rehearing denied February 6, 1970.