[No. 43091.   En Banc.   March 27, 1975.]

LLOYD K. NELSON et al, Appellants, v. ALFRED B. MUELLER
et al, Respondents.

Sullivan, Morrow & Longfelder, by Daniel F. Sullivan
and Gregg L. Tinker, for appellants.

*Williams, Lanza, Kastner & Gibbs,* by *Henry E. Kastner* and *Joel D. Cunningham,* for respondents.

HUNTER, J.—The plaintiffs (appellants), Lloyd K. Nelson and Wylma A. Nelson, his wife, having brought suit for medical malpractice, appeal from a jury verdict in favor of the defendants (respondents), Alfred B. Mueller, M.D., and Sassan Sanai, M.D.

Mr. Nelson (hereinafter referred to as the plaintiff), has suffered from atrial fibrillation (fluctuation of the heart beat) since 1959. He was in the pharmacy business and continued to lead an active life under the care of his family physician, Dr. Mueller. The evidence shows that atrial fibrillation may occur in conjunction with an underlying heart ailment or without an underlying heart ailment, the latter being known as idiopathic. The record is in dispute as to the actual condition of the plaintiff in this regard.

On May 25, 1971, Mr. Nelson visited Dr. Mueller, prior to a trip to Alaska, in order that he might see if there had been any change in his condition. Dr. Mueller suggested that the plaintiff see Dr. Sanai, a specialist in cardiology, to determine his cardiac reserve. Two days later, Dr. Sanai thoroughly examined the plaintiff with hopes that he might qualify as a candidate for a procedure known as electrocardioversion (a procedure which attempts to return the heart to normal rhythm). The most significant risk of such a procedure is that an individual suffering from atrial fibrillation has a propensity to develop blood clots in his heart, and that electrocardioversion may accelerate an embolism (the throwing of the clot to the brain or other part of the body), which could result in either death or paralysis.

From this point the evidence is in dispute. The plaintiff testified that neither of the defendant doctors informed him of the risk of an embolism or alternatives to the procedure in light of his condition. In fact, the plaintiff stated that Dr. Mueller had said there was no risk. In response, Dr. Sanai testified that he fully explained the procedure to the plaintiff, along with its inherent risks and alternatives. Dr.

Mueller testified that he could not honestly remember discussing the risks of the procedure with the plaintiff, yet he believed that he had.

On the advice of the defendants, the plaintiff underwent the procedure on May 31, 1971, which resulted in an embolism causing the permanent paralysis of his left side.

During the trial there was undisputed testimony, including that of the defendants, that there was a duty to inform the plaintiff of the various risks and alternative modes of treatment as they pertained to electrocardioversion. The basic factual issues are whether Mr. Nelson was suffering from idiopathic atrial fibrillation, in which case, according to expert witnesses, electrocardioversion would not be warranted; and secondly, whether the defendants did, in fact, actually inform the plaintiff of the risks. At the conclusion of the trial, the jury returned a verdict in favor of the defendants, upon which judgment was entered. The plaintiff moved for a new trial alleging that newly discovered evidence established that Dr. Sanai had knowingly and willfully given false testimony. This motion was dismissed and the plaintiff appealed to this court for review.

The plaintiff's first assignment of error is that the trial court erred when it instructed the jury that under the "informed consent" doctrine, medical testimony was required to establish the *physician's duty* to disclose those material risks of injury which are inherent in the proposed procedure. The plaintiff contends that medical testimony is only necessary in establishing the existence of the risks and any alternative treatments which are available. The defendants contend that the plaintiff was not prejudiced by the instruction and that the only issue before the jury was one of credibility. We agree with the defendants.

The giving of an erroneous instruction does not justify the granting of a new trial unless the appellant can establish that he was prejudiced thereby and that the error affected the jury's conclusion. *Kennedy v. Clausing*, 74 Wn.2d 483, 445 P.2d 637 (1968); *Stuart v. Consolidated*

*Foods Corp.*, 6 Wn. App. 841, 496 P.2d 527 (1972). The record in this case clearly demonstrates that any error committed by the giving of the above instruction was inconsequential since all of the expert medical testimony, *without exception,* did establish that there was a duty to inform the plaintiff of the risk of an embolism. Even the defendant physicians verified the existence of this duty. The only issue presented to the jury for their consideration was one of credibility; did the defendants fulfill their legal duty to disclose all material risks to the plaintiff or did they not fulfill their duty? The plaintiff's testimony directly contradicted the testimony of Dr. Sanai. The verdict rendered by the jury establishes which testimony was considered to be most persuasive. We are convinced that had the instruction been different, the result would still have remained the same. Without a showing of prejudice by the plaintiff, no ground exists in regard to the giving of this instruction which would warrant a reversal.

■■ In addition to the question of duty, the plaintiff contends that the "informed consent" instruction was erroneous in that it required him to establish that had he been fully informed of the risks, he would not have consented to the treatment, hereinafter referred to as the subjective test. The plaintiff argues that the proper test (the objective test), is what a reasonable man would do rather than the subjective criteria utilized by the trial court. In order to preserve an alleged error in an instruction, an exception must inform the trial court of the *specific ground* for the exception. *Miller v. Staton,* 58 Wn.2d 879, 365 P.2d 333 (1961). While the plaintiff did except to the inclusion of this subjective test under the "informed consent" instruction, arguing that it was "a question for the jury to properly cover in the proximate cause instruction," he did not draw the trial court's attention to the potential error of *using* a subjective test, nor did he propose the use of an objective test, regardless of where it was placed. We emphasized the purpose for requiring specificity in exceptions

in *Roumel v. Fude*, 62 Wn.2d 397, 383 P.2d 283 (1963), wherein we stated on pages 399-400:

> Our rules require that exceptions to instructions shall specify the paragraphs or particular parts of the charge excepted to and shall be sufficiently specific to apprise the trial judge of the *points of law* or question of fact in dispute. The purpose is *to enable the trial court to correct any mistakes in the instructions in time to prevent the unnecessary expense of a second trial.*

(Footnote omitted. Italics ours.) We will not consider a new basis for an exception which is raised for the first time on appeal. *Whipple v. Lambert*, 73 Wn.2d 952, 442 P.2d 266 (1968).

The plaintiff next assigns error to the trial court's refusal to specifically instruct the jury that it could consider all evidence and exhibits, in addition to expert medical testimony, in regard to the issue of whether the defendants were negligent in their treatment of the plaintiff. The plaintiff argues that without such an instruction, the jury was prevented from considering the defendants' office records and various hospital records. This is without merit.

It has long been the rule of this court that individual instructions may not be singled out for consideration without reference to the entire set of instructions which were given. *Miller v. Staton, supra.* The trial court did instruct the jury on the definition of negligence within the confines of a medical malpractice suit, and that *the standard of care* had to be established by expert medical testimony. Furthermore, the jury was specifically instructed to consider all of the evidence in relation to each issue placed before it, which included the issue of whether the defendants *met* the established standard of care. The defendants' office records, as well as those of the hospital, were admitted into evidence, and were therefore available to the jury for their deliberations and to the plaintiff for his closing argument. The record, as well as oral argument before this court, discloses that the issue of negligence was adequately presented to the jury and that the plaintiff not only had the

opportunity to present his theory of the case to the jury, but in addition thereto, that he utilized this opportunity. Furthermore, this evidence was presented to the jury for the secondary purpose of attacking the defendants' credibility. In conclusion, we find no prejudicial error in the trial court's refusal to give this particular instruction.

Finally, the plaintiff assigns error to the trial court's refusal to grant a new trial on the basis of newly discovered evidence. At trial, Dr. Sanai testified that he had looked up over the weekend statistics which revealed that over a 5-year period, 15 embolectomies were performed at Stevens Memorial Hospital out of 157 patients diagnosed to have atrial fibrillation. Subsequent to trial, the plaintiff procured an affidavit from the chief medical record administrator of Stevens Memorial Hospital, who certified that over the 5-year period referred to by Dr. Sanai, there were only five embolectomies performed and of the five, only two involved individuals suffering from atrial fibrillation. Furthermore, the affiant certified that it would not be possible to determine the total number of patients admitted to the hospital who were suffering from atrial fibrillation, and that no request was made for an examination of the records over the weekend. In response, Dr. Sanai submitted his own affidavit certifying that he personally was familiar with 157 cases of atrial fibrillation and 15 cases involving embolectomies. In conjunction with this affidavit, Dr. Sanai presented letters from the medical record departments of two other hospitals where he practiced which showed the number of embolectomies performed in these institutions on patients with atrial fibrillation. When added to the number of embolectomies performed at Stevens Memorial Hospital, there is a total of 15. The defendants argue that Dr. Sanai meant to include all of the hospitals where he practiced in arriving at his statistical conclusions, and therefore the misstatement did not confuse or mislead the jury. We agree with the defendants.

■ ■ The requirements necessary to justify the grant-

ing of a new trial on the ground of newly discovered evidence are: (1) that the new evidence will probably change the result if a new trial is granted; (2) that the evidence must have been discovered since the trial; (3) that it could not have been discovered before the trial by the exercise of diligence; (4) that it is material to the issue; and (5) that it is not merely cumulative or impeaching. *Hill v. L.W. Weidert Farms, Inc.*, 75 Wn.2d 871, 454 P.2d 220 (1969); *Donovick v. Anthony*, 60 Wn.2d 254, 373 P.2d 488 (1962). The evidence presented by the plaintiff goes to the degree of the risk of an embolism. In light of the extensive evidence admitted on this issue at trial, the newly discovered evidence is merely cumulative. Furthermore, the trial court, in considering the motion, implicitly found that the misstatement was not willful and therefore could only serve to impeach the credibility of Dr. Sanai. We are cognizant of the broad discretion vested in the trial court when presented with a motion for a new trial based on newly discovered evidence, and we will not disturb its decision absent proof of a manifest abuse of discretion. The record substantiates the trial court's finding that the newly discovered evidence presented is merely cumulative and impeaching in character, and that there is no showing that this new evidence would probably change the result if a new trial were to be granted. Under these circumstances, the trial court correctly dismissed the plaintiff's motion for a new trial.

The defendants' motion for dismissal has been disposed of by separate order and it therefore need not be discussed.

The judgment of the trial court is affirmed.

STAFFORD, C.J., and FINLEY, HAMILTON, WRIGHT, UTTER, BRACHTENBACH, and HOROWITZ, JJ., concur.