[No. 51368–6.  En Banc.  November 20, 1986.]

SHARON COUCH, *as Personal Representative, Respondent,* v. MINE SAFETY APPLIANCES COMPANY, *Appellant.*

*Stimson Bullitt* (of *Riddell, Williams, Bullitt & Walkinshaw*), for appellant.

*Manza, Moceri, Gustafson & Messina, P.S.,* by *John S. Glassman, Michael S. Manza,* and *Stephen L. Bulzomi,* for respondent.

*Bryan P. Harnetiaux, Robert H. Whaley,* and *Gary N. Bloom* on behalf of Washington Trial Lawyers Association, amici curiae for respondent.

DURHAM, J.—Plaintiff Sharon Couch's husband, Lonnie Ray Couch, was killed when struck on the head by part of a falling tree while working as a logger in August 1982. At the time, Lonnie Couch was wearing an aluminum helmet manufactured by Mine Safety Appliances Company (Mine Safety). Sharon Couch brought this product liability action on behalf of herself, their daughter Kelly, and Lonnie Couch's estate as its personal representative. After trial, the jury returned special verdicts finding that Mine Safety had supplied a helmet which was not reasonably safe, and that the helmet's unsafe condition was a proximate cause of the injury to Couch. The jury awarded $600,000 in damages to the plaintiff.

Mine Safety appealed to the Court of Appeals. It assigns error to the jury instructions because they did not require the plaintiff to prove the availability of an alternative, reasonably safe design for the helmet, or the nature and extent of the enhanced injuries caused by the helmet, nor did they direct the jury to compute the present cash value of dam-

ages. The plaintiff cross–appeals to this court. She claims that the trial court erred in giving instructions on contributory negligence, and by failing to limit their effect to actions on the part of the injured party which contributed to his enhanced injuries.[1]

We affirm the judgment for the plaintiff, and hold that the availability of an alternative, reasonably safe design is not a necessary element of a plaintiff's burden of proof in a product liability action based on defective design. We also hold that the instructions in this case sufficiently placed the burden of proving enhanced injuries on the plaintiff. The court does not find it necessary to reach the remaining issues raised by the parties in this appeal for reasons stated below.[2]

On August 5, 1982, Lonnie Couch was working as a tree faller for Fox and Fox Logging at a logging site near Ashford. Another logger, Charles Ray, stopped to rest before felling three intertwined trees, and discussed the situation briefly with Couch. Ray then proceeded to fall his trees so that they would drop away from each other. On the third tree, Ray's chain saw jammed in the back cut. He called in a tractor to push the tree over and to free his saw. The tree did not fall in the direction Ray intended, which was away from Couch. Rather, it fell toward Couch. The tree struck Couch while he was bucking the limbs from a tree he had just fallen.[3] Couch sustained a skull fracture and fractured

---

[1]Counsel of behalf of the Washington State Trial Lawyers Association filed a brief in support of the plaintiff as amici curiae, stating that this is the first defective product case against a manufacturer brought under the tort and liability reform act of 1981, RCW 4.22.005–.920 and RCW 7.72.010–.060, to reach this court.

[2]The facts of this case would appear to give rise to issues not raised by the parties either at trial or on appeal. The case was tried and defended on the theory of defective design. We do not decide questions sua sponte.

[3]Couch was about 130 feet from the stump of the fallen tree which injured him. A safety regulation, WAC 296–54–529(31), required distances between assigned work areas to be at least twice the height of the trees being felled, which was greater than 130 feet in this case.

ribs. He died 2 days later following brain surgery.

At the time of Couch's accident, he was wearing an aluminum helmet manufactured by Mine Safety. Couch had purchased the helmet 6 months earlier for $13.50. After the accident, the helmet was found beside Couch with a dent in the crown and without two of the four rivets which held the internal suspension in place.

Plaintiff brought this action in Pierce County Superior Court on behalf of herself, her 19–year–old daughter, and Lonnie Couch's estate as its personal representative. Following trial, a jury returned special verdicts finding that: (1) Mine Safety supplied a helmet not reasonably safe; (2) Mine Safety did not breach an implied warranty of fitness; (3) the unsafe condition of the helmet was a proximate cause of the injury; (4) Lonnie Couch was contributorially negligent; and, (5) Lonnie Couch's conduct was not a proximate cause of his own injuries. The jury awarded $600,000 in total damages to the plaintiff.

Mine Safety has appealed the trial court's instructions relating to alternative safe design, plaintiff's burden of proof in an enhanced injury case, and the computation of present cash value of damages. The plaintiff has cross–appealed on Mine Safety's second assignment of error, asserting that contributory negligence is not a defense in an enhanced injury case.

### ALTERNATIVE SAFE DESIGN

At trial, the court gave the jury the following instruction 9:

> The plaintiff has the burden of proving each of the following propositions:
> First, that the defendant either supplied a product which was not reasonably safe as designed at the time the product left the defendant's control . . .

Additionally, the court's instruction 14 read:

> A product manufacturer is subject to liability to a claimant if the claimant's harm was proximately caused by the negligence of the manufacturer in that the product was not reasonably safe as designed at the time

it left the manufacturer's control.

A product is not reasonably safe as designed, if, at the time of manufacture, it is unsafe as designed to an extent beyond that which would be contemplated by the ordinary user, or if the likelihood that the product would cause injury or damage and the seriousness of the injury or damage, outweighed the burden on the manufacturer to design a product that would have prevented the injury or damage and outweighed the adverse effect that an alternate design that was practical and feasible would have on the usefulness of the product.

In determining what an ordinary user would reasonably expect, you should consider the relative cost of the product, the cost and feasibility of eliminating or minimizing the risk, the circumstances and conditions under which the helmets will normally be used, and such other factors as the nature of the product and the claimed defect indicate are appropriate.

In providing these instructions, the court rejected Mine Safety's proposed instruction 11, which stated in relevant part:

The plaintiff has the burden of proving each of the following propositions:

(1) That the defendant Mine Safety Appliances Company was negligent in that the hard hat was not reasonably safe as designed at the time the hard hat left the defendant's control;

(2) That there was, at the time the hard hat was designed and manufactured, an alternative design available which was reasonably safe;

. . .

Mine Safety maintains that the court's omission of the second element of this instruction was erroneous. We disagree.

*Connor v. Skagit Corp.,* 99 Wn.2d 709, 664 P.2d 1208 (1983), is relevant to this issue. In *Connor,* the plaintiff was a logger who had his arm injured by a log smashing into the cab of a yarder from which he was descending. He sued the manufacturer of the logging tower and yarder in a strict product liability action based on a design defect. Connor expressly limited his allegations to the existence of alternative designs. The jury was instructed that Connor claimed

the tower and yarder were not reasonably safe because the manufacturer failed to include a number of safety features which were specified in the instruction. *Connor,* at 715–16.

The jury also was instructed that Connor had the burden of proof on three allegations: first, that the logging tower and yarder were unreasonably dangerous by reason of a design defect; second, that the defective design was a proximate cause of Connor's injuries; and third, that there was a feasible and practical alternative design available to the manufacturer which would have prevented the accident. *Connor,* at 713. The jury returned a general verdict for the manufacturer. Connor appealed, challenging the jury instruction which required him to prove the availability of an alternative, safe design. Consistent with prior case law, this court determined that the availability of an alternative, safe design is a factor which may, rather than must, be considered by a jury in deciding if a product is unreasonably dangerous. *Connor,* at 715 (citing *Seattle–First Nat'l Bank v. Tabert,* 86 Wn.2d 145, 154, 542 P.2d 774 (1975)). We held that a plaintiff may establish that a product is unreasonably dangerous by means of factors other than the availability of alternative, safe designs.[4]

In *Seattle–First Nat'l Bank v. Tabert, supra* at 149, this court determined that strict liability actions encompass design defect claims as well as claims of defective manufacture. In so doing, we considered the boundaries of liability in enhanced injury cases. *Tabert* involved a strict product liability action against the importer of a Volkswagen microbus. The plaintiff there contended that a design defect in the microbus (the lack of structural integrity in

---

[4]Despite this holding, we affirmed the trial court's judgment for the manufacturer. This was based on the fact that Connor chose not to rely on any factors other than the availability of an alternative, safe design in presenting his case to the jury. If a plaintiff seeks to meet his burden of establishing that a product is unsafe by proving only one of the several factors enumerated in *Seattle–First Nat'l Bank v. Tabert,* 86 Wn.2d 145, 154, 542 P.2d 774 (1975), then he must establish that single factor by a preponderance of the evidence. *Connor v. Skagit Corp.,* 99 Wn.2d 709, 715–17, 664 P.2d 1208 (1983).

the vehicle's front panel) either caused or enhanced injuries which resulted in the deaths of the driver and a passenger. Following an extensive review of the authorities on the subject, this court held that Restatement (Second) of Torts § 402A (1965) imposed liability if a product is not reasonably safe. This meant "unsafe to an extent beyond that which would be reasonably contemplated by the ordinary consumer." *Tabert,* at 154. This standard allowed the trier of fact to take into account the intrinsic nature of the product. For example, in the *Tabert* case, the microbus purchaser could not reasonably expect the same degree of safety as the purchaser of a Cadillac. In *Tabert,* at 150-54, we established a relative, not an absolute concept.

> In determining the reasonable expectations of the ordinary consumer, a number of factors must be considered. The relative cost of the product, the gravity of the potential harm from the claimed defect and the cost and feasibility of eliminating or minimizing the risk may be relevant in a particular case. In other instances the nature of the product or the nature of the claimed defect may make other factors relevant to the issue.

*Tabert,* at 154. These factors are incorporated into jury instruction 14 in this case, quoted above.

In 1981, 1 year before Lonnie Couch's accident, the tort and product liability reform act of 1981 (the Act) became effective. Laws of 1981, ch. 27. The Act incorporated *Tabert*'s consumer expectations test in its definition of not reasonably safe products:

> (1) A product manufacturer is subject to liability to a claimant if the claimant's harm was proximately caused by the negligence of the manufacturer in that the product was not reasonably safe as designed or not reasonably safe because adequate warnings or instructions were not provided.
>
> (a) A product is not reasonably safe as designed, if, at the time of manufacture, the likelihood that the product would cause the claimant's harm or similar harms, and the seriousness of those harms, outweighed the burden on the manufacturer to design a product that would have prevented those harms and the adverse effect than an

alternative design that was practical and feasible would have on the usefulness of the product.

. . .

(3) In determining whether a product was not reasonably safe under this section, the trier of fact shall consider whether the product was unsafe to an extent beyond that which would be contemplated by the ordinary consumer.

RCW 7.72.030. The Act also states: "The previous existing applicable law of this state on product liability is modified only to the extent set forth in this chapter." RCW 7.72-.020(1). The court's jury instruction 14, quoted above, incorporated the statutory language almost verbatim as well as some of the language from *Tabert.*

Finally, the Act provides:

Evidence of custom in the product seller's industry, technological feasibility or that the product was or was not, in compliance with nongovernmental standards or with legislative regulatory standards or administrative regulatory standards, whether relating to design, construction or performance of the product or to warnings or instructions as to its use *may be considered* by the trier of fact.

(Italics ours.) RCW 7.72.050(1). This language lends additional support to the conclusion that an alternative, safe design is not a necessary element of the plaintiff's burden of proof.

Mine Safety cites a law review article by one of the Act's sponsors in support of the proposition that the plaintiff bears the burden of proving the existence of a practical and feasible alternative design. Talmadge, *Washington's Product Liability Act,* 5 U. Puget Sound L. Rev. 1, 9 (1981). Such a requirement is simply not supported by the language of the statute. The holding in *Connor v. Skagit Corp.,* 99 Wn.2d 709, 664 P.2d 1208 (1983) still prevails, because both *Connor* and the Act are based upon *Seattle-First Nat'l Bank v. Tabert, supra.*[5]

---

[5]The legislative history of the tort and product liability reform act of 1981 states that the Act establishes a "negligence standard" for defective design cases

In the instant case, the jury was instructed as follows in instruction 5:

Plaintiff claims that the helmet was not reasonably safe as designed by Mine Safety Appliances Company. In addition, plaintiff claims that Mine Safety Appliances Company . . . was negligent in the design of the helmet.

Plaintiff alleges that the helmet was not reasonably designed to minimize the injury–producing effect of impacts such as that which hit decedent, Lonnie Ray Couch. Plaintiff alleges that one or more of the following deficiencies rendered the helmet not reasonably safe:

(1) Inadequate structural and energy–absorbing materials used to construct the shell of the helmet;

(2) Inadequate structural and energy–absorbing materials from which the suspension of the helmet was constructed;

(3) Inadequate or defective design to minimize the energy of foreseeable impacts;

(4) Considering the design of the helmet in question, it did not conform to the implied warranty which accompa-

---

against manufacturers. Senate Select Committee on Tort and Product Liability Reform, *Final Report,* Senate Journal, 47th Legislature (1981), at 631. Amici urge us to clarify the meaning of the language of the Act which states that manufacturers are liable "if the claimant's harm was proximately caused by the *negligence of the manufacturer in that the product was not reasonably safe as designed . . .*" (Italics ours.) RCW 7.72.030(1).

The legislative history itself clarifies the meaning of the term negligence as used by the Act's drafters. The Select Committee believed that "[t]he Washington court, while terming the liability in such cases as one of strict liability, has articulated a test which upon closer analysis involves the balancing of factors more akin to negligence." Senate Journal, 47th Legislature (1981), at 624 (citing *Seattle–First Nat'l Bank v. Tabert,* 86 Wn.2d 145, 542 P.2d 774 (1975)). The Select Committee then stated that the *Tabert* test reflected "essentially a negligence standard in design and warning/instruction cases" and advocated its adoption. Senate Journal, 47th Legislature (1981), at 625.

The following sections of the Act define not reasonably safe in terms of *Tabert's* balancing of the risk of harm versus product utility, RCW 7.72.030(1)(a), and *Tabert's* consumer expectations test, RCW 7.72.030(3). The Select Committee report itself again recognizes this fact in discussing the Act: "Thus, both tests are adopted here as relevant considerations which the trier of fact should consider." Senate Journal, 47th Legislature (1981), at 631. We find that the Act adopted the *Tabert* tests for defective design cases against manufacturers, notwithstanding its reference to negligence. A negligence standard does appear to have been adopted *for actions against manufacturers which allege failure to give adequate warnings or instructions.* RCW 7.72.030(1)(c).

nied it.

Plaintiff claims that because of the helmet's design and condition, Plaintiff's husband suffered damages over and above the minor damage he would have suffered if the helmet had been reasonably safe, thus causing his death.

Couch did not limit her claim to alternative design as did the plaintiff in *Connor*. She presented testimony that the rivets are less likely to pull out if six or eight, rather than four, are used to attach the internal suspension of the helmet to its shell. Overall, however, the jury was presented with general claims of inadequate design by the instruction. Following *Connor* and the Act, Couch did not have the burden of proving that an alternative, reasonably safe design was available to the helmet manufacturer. Thus, the trial court's failure to give a jury instruction to that effect was not error.

### ENHANCED INJURY INSTRUCTIONS

Mine Safety's proposed jury instruction 11 on the plaintiff's burden of proof contained the following language in addition to what is quoted earlier:

The plaintiff has the burden of proving each of the following propositions:

. . .

(3) That the unsafe design of the product was a proximate cause of decedent's injuries over and above the injuries he would have suffered if the alternative design discussed in paragraph 2 of this instruction had been used and subjected to the same accident; and

(4) The extent to which decedent's injuries were increased over and above what they probably would have been if said alternative design had been used and subjected to the same accident.

. . .

Mine Safety claims that the failure to give this instruction was error because the plaintiff was not required to prove the existence and the extent of enhanced injuries.

Case law allows for enhanced injury allegations in product liability actions and assigns the burden of proof regarding the nature and extent of such claims to the

plaintiff. *Baumgardner v. American Motors Corp.,* 83 Wn.2d 751, 522 P.2d 829 (1974). In *Baumgardner,* at 752, we characterized enhanced injury or "second accident" as injury caused or enhanced because of a defect in design or manufacture, even though the defect did not cause or contribute to the initial accident. *Baumgardner* involved claims for personal injuries and wrongful death resulting from an automobile collision in which a defective front seat broke loose and was propelled forward. The plaintiff, not wearing a seatbelt, was injured. The plaintiff's wife, wearing a seatbelt but not a shoulder harness, was killed after being crushed between the seat and the belt.

In *Baumgardner* this court held that a manufacturer may be found liable in negligence for design or manufacturing defects which proximately cause enhanced injuries. We stated that "the plaintiff has the usual burdens of proof as in any negligence action including proof of the nature and extent of the injuries proximately caused or enhanced by the defect." *Baumgardner,* at 758. We also determined that strict liability theory is wholly applicable in enhanced injury cases.[6] *Baumgardner,* at 759.

The jury in this case was clearly instructed that the plaintiff's claim was for enhanced injuries. The trial court's instruction 5, quoted more fully above, provides: "Plaintiff claims that because of the helmet's design and condition, Plaintiff's husband suffered damages over and above the minor damage he would have suffered if the helmet had been reasonably safe, thus causing his death."

The court instructed the jury on the elements of an enhanced injury claim in instruction 18:

A helmet manufacturer is liable for injuries or harm proximately caused by its negligence or fault where the defective design was not a proximate cause of the injury–producing event, but, rather was a proximate cause of the

---

[6]The *Baumgardner* plaintiff was proceeding upon negligence, strict liability, and several other tort theories. This court reviewed the trial court's dismissal of his claims on summary judgment. *Baumgardner v. American Motors Corp.,* 83 Wn.2d 751, 753, 758–59, 522 P.2d 829 (1974).

injuries or harm. In such cases, the manufacturer is liable for injuries or harm proximately caused by the defective design over and above the damages that would have occurred if its product had been reasonably safe.

The jury was instructed on the plaintiff's burden of proof in instruction 9 as follows:

The plaintiff has the burden of proving each of the following propositions:

First, that the defendant either supplied a product which was not reasonably safe as designed at the time the product left the defendant's control, or that the defendant breached an implied warranty that the helmet was fit for the ordinary purposes for which such helmets were used and therefore not reasonably safe.

Second, that the plaintiff's husband was injured.

Third, that the unsafe condition of the product was a proximate cause of plaintiff's damages.

■ We find that, while Mine Safety's proposed instruction 11 may have stated the plaintiff's burden more clearly for the jury, the court's instructions adequately informed the jury of the elements of an enhanced injury claim, as well as the plaintiff's burden of proving the nature and extent of such injuries.

## EXCEPTION TO JURY INSTRUCTIONS

The trial court's jury instruction 28 gave the elements of the damages claimed by the plaintiff. One of these was the anticipated future earnings that Couch would have contributed to his wife.

Mine Safety proposed, in its instruction 32, to tell the jury that "[d]amages must be discounted to present cash value." A description followed, which explained how to compute the present cash value of monies that are expected to be earned in the future.[7] The trial court declined to give this instruction. Instead, it provided the jury with its

---

[7]We note that the Washington Pattern Jury Instruction (WPI) on the present cash value of damage awards begins with virtually the same sentence as Mine Safety's proposal quoted above. WPI 34.02. However, the sentence is bracketed as optional in the pattern instructions, leaving the trial court with discretion to include this instruction when applicable. *See* Note on Use, WPI 34.02.

instruction 30. The court's instruction described a present cash value computation similar to that found in Mine Safety's rejected instruction, but did not direct the jury to perform the computation.

The plaintiff claims that Mine Safety's proposed instruction was erroneous because it would require all damages to be reduced to their present cash value. She contends that the general and intangible damages at issue in this case should not be discounted. The plaintiff also points out that Mine Safety failed to take exception to the court's instruction 30 or to the court's omission of Mine Safety's proposed instruction 32 and cites *Estate of Ryder v. Kelly–Springfield Tire Co.*, 91 Wn.2d 111, 587 P.2d 160, 16 A.L.R.4th 129 (1978), in support of this contention. We find that plaintiff's second assertion is a sufficient basis on which to uphold the trial court's instruction.

CR 51(f), on objections to instructions, states in relevant part: "The objector shall state distinctly the matter to which he objects and the grounds of his objection, specifying the number, paragraph or particular part of the instruction to be given or refused and to which objection is made." *Estate of Ryder v. Kelly–Springfield Tire Co.*, *supra*, is on point here. This case was a wrongful death action brought on a strict liability theory against wheel and tire manufacturers, after a driver was killed when his truck left the road and overturned in a river. The plaintiff argued on appeal that the trial court erred in instructing the jury only on a failure to warn theory and not on a design defect theory. The plaintiff also maintained that the trial court erred in converting the case from a strict liability to negligence action. This court declined to consider plaintiff's challenge, holding that a litigant must take action in the trial court to be permitted later to appeal an allegedly erroneous instruction. We stated that "[t]he trial court must have been sufficiently apprised of any alleged error to have been afforded an opportunity to correct the matter if that was necessary." *Ryder*, at 114 (citing CR 51(f)). The purpose of taking exceptions to instructions is to prevent

the unnecessary expense of a second trial. *Ryder,* at 114 (citing *Nelson v. Mueller,* 85 Wn.2d 234, 533 P.2d 383 (1975)). *See also Crippen v. Pulliam,* 61 Wn.2d 725, 380 P.2d 475 (1963).

■ Mine Safety counters that its citation to the Washington Pattern Jury Instruction at the bottom of its proposed instruction 32 is a sufficient exception. It cites *Kjellman v. Richards,* 82 Wn.2d 766, 514 P.2d 134 (1973). *Kjellman* was an action for personal injuries and property damage resulting from a traffic accident. The plaintiffs appealed from a judgment for the defendant, claiming error in the refusal of a requested negligence per se instruction. At trial, the plaintiffs did take exception to the trial court's instruction and provided reasons. As to their own proposed instruction, they merely stated, however, "'[t]his is a Uniform Washington Pattern Instruction covering negligence per se.'" *Kjellman,* at 769. Mine Safety claims that *Kjellman* allows that citation to a pattern instruction as an adequate exception. This was not the holding of that case. Rather, in *Kjellman,* this court held that the plaintiffs' exceptions, *when considered together,* were sufficiently definite to inform the trial court of the plaintiffs' objection and grounds. *Kjellman,* at 770.

A case which is closer to this one than *Kjellman* is *American Oil Co. v. Columbia Oil Co.,* 88 Wn.2d 835, 567 P.2d 637 (1977). In *American Oil,* an exception to an instruction was taken, but the sole reason given was a cite to a proposed pattern instruction. This court rejected a challenge to the instruction on appeal because counsel had failed to inform "the trial court of the point of law involved and the reasons for the exception." *American Oil,* at 842–43. A challenge to another instruction was also rejected on the same grounds. *See also Egede–Nissen v. Crystal Mt., Inc.,* 93 Wn.2d 127, 134, 606 P.2d 1214 (1980).

Mine Safety is barred from assigning error to instruction 30 on appeal, since it failed to take exception at trial. Accordingly, we need not reach the issue of whether the instructions should have included a direction to the jury to

reduce anticipated future earnings to their present cash value.

Nor is there a reason for us to decide the issue raised by the plaintiff in her cross appeal. She assigns error to several instructions on contributory negligence and claims that contributory negligence in causing an accident is not an available affirmative defense in an enhanced injury case. The jury found that Couch was contributorially negligent, but that his negligence was not a proximate cause of his injuries and did not reduce its award of damages. Therefore, the plaintiff was not prejudiced. An erroneous instruction is harmless error unless the complaining party can establish that he was prejudiced and that the error affected the jury's conclusion. *Nelson v. Mueller, supra* at 236. The issue would have to be decided only if we vacated the judgment for the plaintiff and ordered a new trial.

In summary, we affirm the trial court's judgment for the plaintiff and award of damages. RCW 7.72.030 does not require that the plaintiff in a defective design case against a manufacturer prove the availability of an alternative, reasonably safe design. It is merely a factor for the jury to consider. The instructions adequately placed the burden on the plaintiff of proving the nature and extent of the enhanced injuries.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, DORE, PEARSON, ANDERSEN, CALLOW, and GOODLOE, JJ., concur.