[No. 24618–6–I. Division One. July 30, 1990.]

RICHARD BRUCE CRITTENDEN, ET AL, *Respondents*, v. FIBREBOARD CORP., *Appellant*.

650

*Paul J. Kundtz* and *Riddell, Williams, Bullitt & Walkinshaw* (*John E. Carlson* and *Brobeck, Phleger & Harrison,* of counsel), for appellant.

*Yvonne Huggins–McLean* and *Schroeter, Goldmark & Bender, P.S.,* for respondents.

PEKELIS, J.—Fibreboard Corp. appeals a judgment in favor of Richard Bruce Crittenden. Fibreboard contends that the trial court erred in instructing the jury on Crittenden's strict liability claim. Fibreboard asserts that this instructional error was prejudicial, thus the trial court erred in denying its motion for a new trial.[1] We reverse and remand.

---

[1] Fibreboard also contends that the trial court erred in instructing the jury that if it did not reach a decision by 9 p.m., May 15, 1989, it might have to resume deliberations on May 26, 1989. Fibreboard maintains that this instruction induced a rushed verdict. Fibreboard asserts that because the verdict prejudiced it, the trial court erred in refusing to grant a mistrial. Because we conclude herein that a

# I

In September of 1982, Crittenden, a former rigger and pipefitter/plumber, discovered that he suffered from asbestosis, an asbestos–related lung disease. Crittenden concluded that he contracted the disease while working with products containing asbestos.

In September of 1985, he and his wife filed suit against various insulation manufacturers, including Fibreboard and Celotex Corp. He alleged that the manufacturers were negligent in manufacturing and distributing asbestos products. He also alleged that the products were unreasonably dangerous.

Fibreboard brought a motion for a new trial, asserting that it was prejudiced by the trial court's erroneous instructions to the jury. The trial court denied the motion.

The sole issue on appeal concerns the trial court's instructions regarding "state of the art" and "industry custom" evidence.[2] During the last few days of the trial, the trial judge and the attorneys discussed the parties' proposed jury instructions on this issue in detail. On May 9, 1989, the judge and attorneys considered what instructions, if any, should be given regarding the "state of the art" and "industry custom" evidence which had been introduced in the trial. Crittenden argued that the court should instruct the jury that evidence on this defense should be limited to the negligence claim. Fibreboard and Celotex argued that this evidence was relevant to the design defect claim, as well as the negligence claim.

Later that afternoon, Crittenden offered his proposed instruction 10, which stated that evidence "of the general

---

new trial is warranted based on instructional error on Crittenden's strict liability claim, it is not necessary for us to reach this issue.

[2]State of the art evidence "relates to the technological feasibility of alternative safer designs in existence at the time the product was originally manufactured". Evidence of industry custom refers to "a practice or custom regarding a particular design or manufacturing technique utilized by most manufacturers in that industry." *Lenhardt v. Ford Motor Co.,* 102 Wn.2d 208, 210, 683 P.2d 1097, 47 A.L.R.4th 609 (1984).

historical medical and scientific knowledge concerning the hazards of asbestos" could only be considered on the negligence claim.[3] Fibreboard offered its proposed instruction 21, which stated that a manufacturer's knowledge is relevant to its duty to warn, and that medical and scientific knowledge is relevant to the manufacturer's knowledge.[4]

After hearing arguments from both sides, the judge stated: "I'm going to have the last sentence read, 'This instruction does not apply to plaintiff's claim of unsafe product design.'" At this point, the judge adopted Crittenden's proposed instruction 10, and rejected Fibreboard's proposed instruction 21. Fibreboard objected.

---

[3]Crittenden's proposed instruction 10 states in full:

"Evidence on the subject of the general historical medical and scientific knowledge concerning the hazards of asbestos has been introduced in this case. You may consider this evidence only on plaintiffs' negligence claims that defendants failed to give adequate warnings or instructions. You must not consider the evidence on plaintiffs' product liability claim."

[4]Fibreboard's proposed instruction 21 states:

"You must determine whether the defendants reasonably should have foreseen, at the time the products were marketed, that the use of defendant's products was unreasonably dangerous to workers similarly situated to plaintiff. Foreseeability means foresight. To determine whether the defendants should have foreseen unreasonable dangers to such workers you have to determine whether the defendants had knowledge of the dangers, or in the exercise of reasonable care, should have had such knowledge, at the time their products were placed on the market.

"To consider what knowledge the defendants should have had, you must inquire into what is called the state of the art at the time the products were marketed.

"'State of the Art' means simply those things which were generally known to the medical and scientific community, about a particular product, at a given point in time. While a manufacturer is obligated to keep informed of scientific knowledge and discoveries relating to its product, a manufacturer is not automatically required to show what the state of the art is at a particular time. It is charged only with duty to exercise reasonable care to keep informed of developments in the medical and scientific community, that is, the state of the art.

"A manufacturer's duty to warn users about dangers in the use of its products is determined by the manufacturers' actual knowledge of such dangers or such knowledge as it reasonably should have obtained from the scientific and medical community."

On May 10, 1989, the judge and the attorneys resumed their discussions, beginning with Celotex's proposed instruction 12[5] and Fibreboard's proposed instruction 14.[6] The trial judge suggested that in order to make it clear that evidence about industry custom and technological feasibility could not be considered on the strict liability claim, he would add: "This instruction applies only to plaintiff's claims of negligence" to the end of Fibreboard's proposed instruction 14.

Fibreboard maintained that this was an incorrect application of the tort reform act which specifies that evidence about custom and feasibility is relevant to both negligence and strict liability claims. After each side presented its arguments, the judge explained that he would allow each side to argue the facts referenced in Celotex's proposed instruction 12 and Fibreboard's proposed instruction 14, but he would not give a specific instruction about the evidence.

The trial court did not give Celotex's proposed instruction 12 or Fibreboard's proposed instruction 14. The trial court did give Crittenden's proposed instruction 10 with the additional final sentence it had suggested sua sponte.[7]

---

[5]Celotex's proposed instruction 12 states:

"You may consider evidence of custom in the product sellers' industry, technological feasibility, or that the product was or was not in compliance with nongovernmental standards or with legislative regulatory standards or administrative regulatory standards, whether relating to design, construction, or performance of the product or to warnings or instructions as to its use in determining whether the product was not reasonably safe."

[6]Fibreboard's proposed instruction 14 states:

"In determining whether a manufacturer is negligent, you may consider evidence of custom in the industry, technological feasibility or that the product was or was not in compliance with nongovernmental standards or with legislative regulatory standards or administrative regulatory standards, whether relating to design, construction or performance of the product or to warnings or instruction as to its use."

[7]Instruction 10 states:

"Evidence on the subject of the general historical medical and scientific knowledge concerning the hazards of asbestos has been introduced in this case.

The jury found that both Celotex and Fibreboard manufactured products which were not reasonably safe as designed, or, alternatively, that both manufacturers were negligent.[8] The jury also found, however, that Celotex's products were not a proximate cause of Crittenden's injuries. Thus, a verdict was entered only against Fibreboard. The trial court accordingly entered judgment against Fibreboard.

## II

Fibreboard contends that the trial court erred in instructing the jury that it could consider historical, medical, and scientific knowledge about the hazards of asbestos only in assessing Crittenden's negligence claim, but not in assessing his defective design claim. Fibreboard also contends that because this instruction was improper, the trial court erred in refusing to grant its motion for a new trial.

In his brief and again at oral argument, Crittenden responds first that Fibreboard's argument is without merit because it is based on a mistaken notion that instruction 10 prevented the jury from considering the defense in the design defect claim. Crittenden argues that the last sentence of instruction 10 expressly states that the limitation on this defense does *not* apply to the design defect claim.

We disagree. When read in the context of the instruction as a whole, it is apparent that the last sentence of instruction 10 is intended to and does reiterate the judge's directive to the jury not to consider evidence about general historical, medical, and scientific knowledge for the unsafe product design claim. The last sentence cannot be said to advise the jury that the instruction "does not apply" to the design defect claim; it is at best grammatically confusing.

---

You may consider this evidence only on plaintiffs' negligence claims that defendants failed to give adequate warnings or instructions. *This instruction does not apply to plaintiffs' claim of unsafe product design.*" (Italics ours.)

[8]The verdict form did not differentiate between the two theories of recovery, nor were special interrogatories submitted to the jury which would permit us to determine which theory the jury adopted. It is also possible that it accepted both.

Second, Crittenden asserts that Fibreboard did not comply with CR 51(f) or propose a legally correct instruction, thus it failed to preserve its challenge to this instruction.

CR 51(f) requires that, when objecting to the giving or refusing of an instruction, "[t]he objector shall state distinctly the matter to which he objects and the grounds of his objection". The purpose of this rule is to clarify, at the time when the trial court has before it all the evidence and legal arguments, the exact points of law and reasons upon which counsel argues the court is committing error about a particular instruction.

(Citations omitted.) *Stewart v. State*, 92 Wn.2d 285, 298, 597 P.2d 101 (1979); *see also Egede-Nissen v. Crystal Mt., Inc.*, 93 Wn.2d 127, 134, 606 P.2d 1214 (1980) ("[f]lawed instructions to which inadequate exceptions are taken will not be considered on appeal and, thus, cannot be the basis upon which to grant a new trial").

 ■ If a party is not satisfied with an instruction, it must propose a correct instruction. If a party fails to propose a correct instruction, it cannot complain about the court's failure to give it. *Hoglund v. Raymark Indus., Inc.*, 50 Wn. App. 360, 368, 749 P.2d 164 (1987), *review denied*, 110 Wn.2d 1008 (1988); *see also Hinzman v. Palmanteer*, 81 Wn.2d 327, 334, 501 P.2d 1228 (1972) ("[t]he court is under no obligation to give an instruction which is erroneous in any respect").

Crittenden's assertion that Fibreboard failed to preserve the instructional issue for review is not supported by the record. Fibreboard objected to the court's instruction 10, arguing that evidence of industry custom and feasibility were relevant to both the design defect claim and the negligence claim. Fibreboard pointed out that expressly limiting consideration of this evidence to the negligence claim would be an incorrect application of the tort reform act.

 ■ Fibreboard also offered its proposed instruction 14 and urged the court to adopt Celotex's proposed instruction 12. It contended that both instructions would properly instruct the jury that evidence of custom and feasibility was applicable to Crittenden's negligence and strict liability

claims. Crittenden claims that proposed instructions 12 and 14 were not truly alternatives to instruction 10, and that no alternative to 10 was offered by Fibreboard. As our discussion on the merits, *infra*, explains, however, the state of the art evidence *does* properly apply to plaintiff's design defect claim as well as to its negligence claim. Therefore, no limiting instruction concerning the evidence was required, and Fibreboard had no obligation to propose an alternative instruction.

We conclude from our review of the record that there was an ongoing discussion between the judge and the attorneys concerning whether a design defect claim is a strict liability claim or a negligence claim and whether evidence of custom and feasibility is relevant to design defect. The judge was aware of Fibreboard's objections and considered its legal arguments, and the issue has been preserved for appellate review.

Finally, Crittenden asserts that even if this issue is reviewable, the trial court was correct in giving instruction 10 and in refusing to give Fibreboard's proposed instruction 14 and Celotex's proposed instruction 12. Crittenden argues that evidence about historical, medical, and scientific knowledge is properly considered only in assessing Crittenden's negligence claim.

We disagree. Crittenden brought his action against Fibreboard under two theories: strict liability for defective design and negligence for failure to warn. Under the tort reform act, which applies here, design defect claims are strict liability claims.[9] *Falk v. Keene Corp.*, 113 Wn.2d 645, 653, 782 P.2d 974 (1989).

RCW 7.72.030 provides, in part:

> (1) A product manufacturer is subject to liability to a claimant if the claimant's harm was proximately caused by the

---

[9]The tort reform act of 1981 applies to "all claims arising on or after July 26, 1981." RCW 4.22.920(1). The act established a single product liability claim to include actions previously based on strict liability in tort, negligence and breach of duty to warn or instruct. RCW 7.72.010(4).

*negligence of the manufacturer in that the product was not reasonably safe as designed* or not reasonably safe because adequate warnings or instructions were not provided.

(a) *A product is not reasonably safe as designed, if,* at the time of manufacture, the likelihood that the product would cause the claimant's harm or similar harms, and the seriousness of those harms, outweighed the burden on the manufacturer to design a product that would have prevented those harms and the adverse effect that an alternative design that was practical and feasible would have on the usefulness of the product: . . .

. . . .

(3) In determining whether a product was not reasonably safe under this section, the trier of fact shall consider whether the product was unsafe to an extent beyond that which would be contemplated by the ordinary consumer.

(Italics ours.)

Despite the use of the word "negligence" in RCW 7.72.030(1), the Legislature did not adopt an ordinary negligence standard for determining manufacturer liability for defectively designed products.[10] *Falk,* 113 Wn.2d at 651 (citing *Couch v. Mine Safety Appliances Co.,* 107 Wn.2d 232, 239 n.5, 728 P.2d 585, 78 A.L.R.4th 139 (1986)). Rather, "negligence" refers to the "'negligence of the manufacturer *in that* the product was not reasonably safe'" as designed. *Falk,* 113 Wn.2d at 651 (quoting RCW 7.72-.030(1)(a)).

A plaintiff in a product liability case may prove that the defendant manufacturer's product was not reasonably safe by either of two methods: a risk/utility analysis or a consumer expectations analysis. *Falk,* 113 Wn.2d at 654–55. *But cf. Falk,* 113 Wn.2d at 663 (Callow, C.J., concurring in part, arguing that consumer expectations is not an alternative basis for liability but rather one factor to consider in the risk/utility analysis).

---

[10]The act did, however, adopt an ordinary negligence standard for actions which allege failure to give adequate warnings or instructions. *Couch v. Mine Safety Appliances Co.,* 107 Wn.2d 232, 239 n.5, 728 P.2d 585, 78 A.L.R.4th 139 (1986).

Under the risk/utility analysis the plaintiff may attempt to prove that

at the time of manufacture, the likelihood that the product would cause plaintiff's harm or similar harms, and the seriousness of those harms, outweighs the manufacturer's burden to design a product that would have prevented those harms and any adverse effect a practical, feasible alternative design would have on the product's usefulness.

*Falk*, 113 Wn.2d at 654 (citing RCW 7.72.030(1)(a)).

Alternatively, the plaintiff may establish liability by proving that the product was "unsafe to an extent beyond that which would be contemplated by the ordinary consumer." *Falk*, 113 Wn.2d at 654 (citing RCW 7.72.030(3)). In determining a consumer's expectations regarding a product's safety, factors such as the relative cost of the product, the gravity of the potential harm from the claimed defect and the cost and feasibility of eliminating or minimizing the risk are to be considered. *Seattle–First Nat'l Bank v. Tabert*, 86 Wn.2d 145, 154, 542 P.2d 774 (1975).

Although the tort reform act did not change the nature of a design defect claim, it did change prior law in other important respects. *Falk*, 113 Wn.2d at 654. Before the act, parties could not introduce industry custom and technological feasibility evidence in strict liability design defect actions. Under the act, however, the trier of fact may consider both kinds of evidence:

(1) *Evidence of custom in the product seller's industry, technological feasibility* or that the product was or was not, in compliance with nongovernmental standards or with legislative regulatory standards or administrative regulatory standards, *whether relating to design,* construction or performance of the product *or to warnings or instructions as to its use* may be considered by the trier of fact.

(Italics ours.) RCW 7.72.050(1); *see also Falk*, 113 Wn.2d at 654 (citing *Lenhardt v. Ford Motor Co.*, 102 Wn.2d 208, 212, 683 P.2d 1097, 47 A.L.R.4th 609 (1984)).

██ In *Falk*, the court explicitly stated that: "RCW 7.72-.050(1) . . . is relevant to the inquiries under both RCW 7.72.030(1)(a) and (3)." *Falk*, 113 Wn.2d at 655. In other words, the evidence addressed in RCW 7.72.050(1) *"could*

*be relevant to the burden upon a manufacturer to design a safe product"*, and could also be relevant *"to that which is reasonable for an ordinary consumer to expect in the way of product safety."* (Italics ours.) *Falk,* 113 Wn.2d at 655.

Thus, evidence of historical, medical, and scientific knowledge about the dangers of asbestos, whether termed "state of the art" evidence or evidence about custom in the industry, may be considered by the trier of fact on the strict liability design claim. Because instruction 10 explicitly limited the jury's consideration of this evidence to Crittenden's negligence claim, we conclude that the trial court erred in giving this instruction.

We next consider whether this erroneous instruction prejudiced Fibreboard. An erroneous instruction given on behalf of the party who received a favorable verdict is presumed prejudicial and is grounds for reversal unless it is harmless. *State v. Wanrow,* 88 Wn.2d 221, 237, 559 P.2d 548 (1977). A harmless error is a trivial error which in no way affected the outcome of the case. *Wanrow,* 88 Wn.2d at 237.

Here, under instruction 10, the jury was not permitted to consider any evidence of historical, medical, and scientific knowledge about the dangers of asbestos when it decided whether Fibreboard's products were not reasonably safe as designed. *See Worthington v. Caldwell,* 65 Wn.2d 269, 276, 396 P.2d 797 (1964) ("juries will be deemed to have understood, followed and applied the court's instructions"). As we have explained herein, this evidence is in fact relevant in determining whether a product is "not reasonably safe as designed". *See* RCW 7.72.030(1)(a); RCW 7.72.050(1). In reaching a decision about design defect under instruction 16,[11] the jury should have considered this evidence in

---

[11]Instruction 16 states:

"A manufacturer has a duty *to design a product so that it is reasonably safe.*

"A product is not reasonably safe as designed if, at the time of manufacture:

"The likelihood that the product would cause injury or damage similar to that claimed by the plaintiffs and the seriousness of such injury or damage, outweighed the burden on the manufacturer to design a product that would have prevented

applying the risk/utility analysis and the consumer expectation analysis. *See Falk,* 113 Wn.2d at 655.

Because the jury verdict form does not indicate whether the jury found for Crittenden because Fibreboard's products were not reasonably safe as designed or because Fibreboard was negligent, we cannot determine that the erroneous instruction did not prejudice Fibreboard. Accordingly, we reverse and remand.

GROSSE, A.C.J., and WEBSTER, J., concur.

the injury or damage and outweighed the adverse effect that an alternative design that was practical and feasible would have had on the usefulness of the product, or

"The product was unsafe to an extent beyond that which would be contemplated by an ordinary user. In determining what an ordinary user would reasonably expect, you should consider the relative cost of the product, the seriousness of the potential harm from the claimed defect, the cost and feasibility of eliminating or minimizing the risk, and such other factors as the nature of the product and the claimed defect indicate are appropriate." (Italics ours.)