[No. 55945–7.   En Banc.   October 31, 1989.]

JOHN J. FALK, ET AL, *Respondents*, v. KEENE
CORPORATION, ET AL, *Petitioners*.

*Hillis, Clark, Martin & Peterson,* by *Mark S. Clark, Theresa R. Wagner,* and *Gregory E. Keller; Williams, Kastner & Gibbs, Daniel W. Ferm,* and *Kenneth E. Petty; Gibson, Dunn & Crutcher,* by *Steven T. Johnson, Kathleen Garvin,* and *Kent T. van den Berg,* for petitioners.

*Schroeter, Goldmark & Bender,* by *William S. Bailey* and *William Rutzick,* for respondents.

BRACHTENBACH, J.—At issue is whether jury instructions regarding a claim that manufacturers' products were defectively designed either misstated the law or confused the jury by leading it to believe that common law negligence principles apply to a design defect claim brought under the tort reform act of 1981. We hold that ordinary negligence is not the standard adopted by the Legislature for determining manufacturer liability for defectively designed products, that the instructions given in this case erroneously allowed the jury to apply a common law negligence standard, and that the error is reversible.

This is a personal injury action brought by John Falk, now deceased, and his wife (plaintiffs) against the Keene Corporation and other companies which manufactured asbestos insulation products to which Falk was allegedly exposed during service in the Navy from 1947 to 1953. Plaintiffs asserted that the exposure to the asbestos products caused Falk to develop mesothelioma, a form of cancer. Plaintiffs claimed that petitioners were liable both because they failed to warn of dangers associated with asbestos products, and because the products containing asbestos were defectively designed.

The trial court instructed the jury on design defect product liability in accord with WPIC 110.02 (1984), in

language closely following that of RCW 7.72.030(1), (1)(a), and (3).

A product manufacturer is subject to liability to a claimant if the claimant's harm was proximately caused by the *negligence* of a manufacturer in that the product was not reasonably safe as designed at the time it left the manufacturer's control.

A product is not reasonably safe as designed, if, at the time of manufacture, the likelihood that the product would cause injury or damage similar to that claimed by plaintiff, and the seriousness of such injury or damage, outweighed the burden on the manufacturer to design a product that would have prevented the injury or damage and outweighed the adverse effect that an alternative design that was practical and feasible would have on the usefulness of the product.

In determining whether a product was not reasonably safe, you shall consider whether the product was unsafe to an extent beyond that which would be contemplated by an ordinary user.

(Italics ours.) Instruction 11A; Clerk's Papers, at 220.

Plaintiffs excepted to the court's refusal to give plaintiffs' proposed instruction 25, arguing that the proposed instruction correctly reflected the law on design defect product liability as it existed before the tort reform act of 1981, Laws of 1981, ch. 27. Plaintiffs maintained that strict liability for design defects, as set forth in *Seattle–First Nat'l Bank v. Tabert*, 86 Wn.2d 145, 542 P.2d 774 (1975), is still the law with respect to product design defects.

The trial court also gave instructions summarizing plaintiffs' allegations and burden of proof; these instructions used the term "negligence" to apply to both the design defect and the failure to warn claims.[1] The court gave

---

[1]Instruction 15 provided, in relevant part:

"Plaintiffs claim that the defendants were negligent in the manufacture and distribution of these products in that these asbestos–containing products were not reasonably safe and had inadequate design or lack of warnings.

"Each defendant denies these claims and asserts that its conduct in manufacturing and selling the products was reasonable under the circumstances prevailing at the time . . ." Clerk's Papers, at 225.

Instruction 16 provided, in relevant part:

"The plaintiff has the burden of proving each of the following propositions:

"First, that the defendant was negligent in that either: (a) the product was not reasonably safe because adequate warnings or instructions were not provided; or (b) the product was not reasonably safe as designed at the time it left the manufacturer's control." Clerk's Papers, at 226.

standard instructions on common law negligence.[2] Following a jury verdict in favor of the manufacturers, plaintiffs appealed. The Court of Appeals reversed, holding that strict liability is still the standard for design defect claims and that giving instruction 11A in conjunction with common law negligence instructions was prejudicial error because it allowed the jury to apply an ordinary negligence standard to design defect claims. The Court of Appeals further held that instruction 11A standing alone was erroneous because the reference in the instruction to negligence was likely to confuse the ordinary, reasonable juror. Therefore, the court said, the instruction was misleading and invited the jury to misapply the law. *Falk v. Keene Corp.*, 53 Wn. App. 238, 767 P.2d 576 (1989). Review was granted by this court.

The root question in this case is the nature of a design defect product liability claim under the tort reform act of 1981. In examining this question, we first turn to a brief description of the law regarding design defect claims prior to the tort reform act. As set forth in Restatement (Second) of Torts § 402A (1965), "[o]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer . . . is subject to liability for physical harm thereby caused to the ultimate user . . ." This court adopted the strict liability theory of section 402A as to manufacturers in *Ulmer v. Ford Motor Co.*, 75 Wn.2d 522, 532, 452 P.2d 729 (1969). In *Seattle–First Nat'l Bank v. Tabert, supra,* we applied strict liability principles to

---

[2]Instruction 13 provided:

"Negligence is the failure to exercise ordinary care. It is the doing of some act which a reasonably careful person would not do under the same or similar circumstances or the failure to do something which a reasonably careful person would have done under the same or similar circumstances.

"Ordinary care means the care a reasonably careful person would exercise under the same or similar circumstances." Clerk's Papers, at 222.

Instruction 14 provided:

"Negligence is to be judged in light of circumstances or knowledge existent at the time of the occurrence. It is a question of what reasonable men with common sense under the same or similar circumstances, and at the same or similar time, would or should have anticipated in the exercise of reasonable care." Clerk's Papers, at 223.

design defect claims. We held that "[i]f a product is unreasonably dangerous, it is necessarily defective. The plaintiff may, but should not be required to prove defectiveness as a separate matter." *Tabert,* at 154.

For purposes of defining "unreasonably dangerous," this court in *Tabert* adopted a consumer expectations standard of "reasonably safe." After examining a number of possible formulations for "consumer expectations," we held that liability is imposed if the product is

> unsafe to an extent beyond that which would be reasonably contemplated by the ordinary consumer. . . .
>
> In determining the reasonable expectations of the ordinary consumer, a number of factors must be considered. The relative cost of the product, the gravity of the potential harm from the claimed defect and the cost and feasibility of eliminating or minimizing the risk may be relevant in a particular case. In other instances the nature of the product or the nature of the claimed defect may make other factors relevant to the issue.

*Tabert,* at 154.

The focus in a design defect claim was on the buyer's expectations. *Lenhardt v. Ford Motor Co.,* 102 Wn.2d 208, 683 P.2d 1097, 47 A.L.R.4th 609 (1984) (decided under pre-tort reform act law). This court said that "our rule of strict liability focuses attention upon the product and not upon the actions of the seller or manufacturer." *Lenhardt,* at 212.

Thus, prior to the tort reform act of 1981, design defect claims were judged under the consumer expectations test of *Tabert,* with its balancing of risk and utility, and focus was on the product and its safety.

In 1981, the Legislature codified product liability law. It did so with certain express purposes in mind. The preamble to the tort reform act of 1981 states the purpose of the act as the creation of "a fairer and more equitable distribution of liability among parties at fault." Laws of 1981, ch. 27, § 1. The Legislature was concerned with rising insurance costs which increased the cost of goods, "resulted in disincentives to industrial innovation and the development of new products", and tended to encourage manufacturers to either go without insurance or to pass the cost of insurance

on to the consumer. Laws of 1981, ch. 27, § 1. The preamble continued:

> It is the intent of the legislature to treat the consuming public, the product seller, the product manufacturer, and the product liability insurer in a balanced fashion in order to deal with these problems.
>
> It is the intent of the legislature that the right of the consumer to recover for injuries sustained as a result of an unsafe product not be unduly impaired. . . .

Laws of 1981, ch. 27, § 1.

RCW 7.72 contains most of the act's provisions pertaining to product liability actions. With regard to design defect claims, RCW 7.72.030(1) provides that

> [a] product manufacturer is subject to liability to a claimant if the claimant's harm was proximately caused by the *negligence of the manufacturer* in that the product was not reasonably safe as designed or not reasonably safe because adequate warnings or instructions were not provided.

(Italics ours.)

RCW 7.72.030(1)(a) defines "not reasonably safe" for purposes of design defect claims:

> A product is not reasonably safe as designed, if, at the time of manufacture, the likelihood that the product would cause the claimant's harm or similar harms, and the seriousness of those harms, outweighed the burden on the manufacturer to design a product that would have prevented those harms and the adverse effect that an alternative design that was practical and feasible would have on the usefulness of the product[3] . . .

RCW 7.72.030(3) expressly provides for consideration of consumer expectations:

> In determining whether a product was not reasonably safe under this section, the trier of fact shall consider whether the product was unsafe to an extent beyond that which would be contemplated by the ordinary consumer.

Initially, it is apparent from the statute itself that the Legislature did not intend to engraft ordinary negligence principles onto the law of design defect product liability claims. The "negligence" referred to is the "negligence of

---

[3]A 1988 amendment regarding firearms and ammunition is not relevant to this case. *See* Laws of 1988, ch. 94, § 1.

the manufacturer *in that* the product was not reasonably safe", (italics ours) and the statute specifically defines "not reasonably safe".

Moreover, as we explained in *Couch v. Mine Safety Appliances Co.,* 107 Wn.2d 232, 239 n.5, 728 P.2d 585 (1986):

> The legislative history itself clarifies the meaning of the term negligence as used by the Act's drafters. The [Senate Select Committee on Tort and Product Liability Reform] believed that "[t]he Washington court, while terming the liability in such cases as one of strict liability, has articulated a test which upon closer analysis involves the balancing of factors more akin to negligence." [Final Report,] Senate Journal, 47th Legislature (1981), at 624 (citing *Seattle–First Nat'l Bank v. Tabert,* 86 Wn.2d 145, 542 P.2d 774 (1975)). The Select Committee then stated that the *Tabert* test reflected "essentially a negligence standard in design and warning/instruction cases" and advocated its adoption. Senate Journal, 47th Legislature (1981), at 625.

The Select Committee's assessment of *Seattle–First Nat'l Bank v. Tabert,* 86 Wn.2d 145, 542 P.2d 774 (1975), as articulating a negligence–like test, and its advocacy of this test, tends to explain the use of the term "negligence" in the statute, but does not support the premise that the Legislature adopted common law negligence as the standard for design defects. Instead, the *Tabert* approach was favored.

If ordinary negligence is not the statutory standard, what is? In defining "not reasonably safe," the Legislature set forth a risk–utility analysis and mandated that the trier of fact consider consumer expectations. RCW 7.72.030(1)(a), (3). These are the components of a design defect claim under *Tabert.* Once the product is found to be not reasonably safe under these standards, the manufacturer is liable for harm proximately caused by the design defect. This is the same kind of analysis we adopted in *Tabert.* The statute thus decrees a strict liability standard for design defects, as we did in *Tabert.*

Again, our analysis finds support in the Select Committee's Final Report:

> Factors examined under . . . [RCW 7.72.030(1)(a)'s] balancing test are similar to those suggested by the Washington court in analyzing the consumer expectation test, *Seattle–First National Bank v. Tabert,* 86 Wn.2d 145 (1975), and therefore can be harmonized with the consumer expectation test. Thus, both tests are adopted here as relevant considerations which the trier of fact should consider.

Senate Journal, 47th Legislature (1981), at 631. We recognized the Legislature's adoption of both a risk–utility balancing test similar to that in *Tabert* and the consumer expectations test itself in *Couch,* at 239 n.5.

The manufacturers in this case argue, however, that the structure of the statute as a whole indicates the Legislature did not intend a strict liability standard for design defects. The argument is based on language in RCW 7.72.030. Subsection (1)(b) provides that a product is not reasonably safe where warnings and instructions provided at the time of manufacture are inadequate under a balancing test similar to that for design defects. Subsection (1)(c) provides that a product is not reasonably safe because adequate warnings and instructions were not given "after the product was manufactured where a manufacturer learned or where a reasonably prudent manufacturer should have learned about a danger connected with the product after it was manufactured." Section (2) provides that

> [a] product manufacturer is subject to strict liability to a claimant if the claimant's harm was proximately caused by the fact that the product was not reasonably safe in construction or not reasonably safe because it did not conform to the manufacturer's express warranty or to the implied warranties under Title 62A RCW.

The argument is that because the Legislature used the term "strict liability" in section (2), and the term "negligence" in section (1), the Legislature did not intend that strict liability still be the law with respect to design defects.

However, as noted above, legislative history shows that the Select Committee believed that the *Tabert* balancing test was something "akin" to negligence. It is therefore not surprising that the term "negligence" was used in the statute to apply to a design defect claim. It is critical not to

read too much into the Select Committee's language. The Select Committee did not say that common law negligence is the standard, but that it thought *Tabert* set forth a negligence–like standard.

Subsection (1)(c), regarding the adequacy of postmanufacture warnings and instructions, sets forth a standard consistent with a traditional negligence approach, as we also recognized in *Couch,* at 239 n.5. Our conclusion that ordinary negligence is not the standard for design defect claims is supported by the fact that subsection (1)(a) does not include language like that found in subsection (1)(c).

Section (2) provides that a manufacturer is "strictly liable" for harm caused by products not reasonably safe in construction or in nonconformance with warranties. Significantly, there is no risk–utility balancing test required for this type of product liability claim. Because the Legislature thought that type of balancing to be "akin" to negligence, but did not intend that it be undertaken for claims under section (2), it is also not surprising that the term "strict liability" is used in the section. Put simply, the Legislature evidently doubted that what we termed "strict liability" in *Tabert* is, or should be called, "strict liability."

■■ This semantic distinction does not alter the fact that the statute sets forth the same type of design defect analysis which we adopted in *Tabert.* Therefore, a design defect product liability claim is still a strict liability claim, as the term is used in *Tabert.* Further, the focus is still on the reasonable safety of the product. Moreover, because consumer expectations are still to be considered by the trier of fact, the Legislature has retained aspects of the buyer–oriented approach which existed before the tort reform act of 1981. This is entirely consistent with the stated purpose of the act "that the right of the consumer to recover for injuries sustained as a result of an unsafe product not be unduly impaired." Laws of 1981, ch. 27, § 1.

Although the nature of a product liability claim has not changed, the Legislature has made some changes in product liability law. For example, RCW 7.72.050(1) allows the trier

of fact to consider evidence of industry custom and technological feasibility, and evidence of whether or not the product was in compliance with nongovernmental standards or with legislative or administrative regulatory standards. RCW 4.22.005 and .015, also passed as part of the tort reform act of 1981, provide that in actions involving product liability claims the contributory negligence of a plaintiff diminishes proportionately damages otherwise recoverable. With these changes, the law pertaining to design defect claims is not precisely as it was before the tort reform act of 1981. Prior to the effective date of the act, evidence of industry customs and standards was not proper in a design defect claim, *Lenhardt v. Ford Motor Co.*, 102 Wn.2d 208, 212, 683 P.2d 1097, 47 A.L.R.4th 609 (1984), and comparative negligence did not apply to actions based on strict liability, *Seay v. Chrysler Corp.*, 93 Wn.2d 319, 609 P.2d 1382, 9 A.L.R.4th 625 (1980).

Despite the changes, we emphasize that the basic nature of the claim was not altered by the Legislature. A design defect claim still is, as it was before the act, a strict liability claim.

Following RCW 7.72, a plaintiff seeking to establish manufacturer liability for defective product design will establish liability by proving that, at the time of manufacture, the likelihood that the product would cause plaintiff's harm or similar harms, and the seriousness of those harms, outweighs the manufacturer's burden to design a product that would have prevented those harms and any adverse effect a practical, feasible alternative design would have on the product's usefulness. RCW 7.72.030(1)(a). If the plaintiff fails to establish this, the plaintiff may nevertheless establish manufacturer liability by showing the product was unsafe to an extent beyond that which would be contemplated by the ordinary consumer. RCW 7.72.030(3). If the product design results in a product which does not satisfy this consumer expectations standard, then the product is not reasonably safe.

RCW 7.72.050(1), which provides for admissibility of evidence of industry custom and technological feasibility, and evidence of whether or not the product was in compliance with nongovernmental standards or with legislative or administrative regulatory standards, is relevant to the inquiries under both RCW 7.72.030(1)(a) and (3). That is, this evidence could be relevant to the burden upon a manufacturer to design a safe product. Also, this evidence will often be relevant to that which is reasonable for an ordinary consumer to expect in the way of product safety. In this regard, we adhere to our requirement in *Tabert* that the expectations of the consumer must be the *reasonable* expectations of the ordinary consumer. *Seattle–First Nat'l Bank v. Tabert,* 86 Wn.2d 145, 154, 542 P.2d 774 (1975). Under the particular facts of a given case, for example, it may be unreasonable for a consumer to expect product design to depart from legislative or administrative regulatory standards, even if to do so would result in a safer product. We will not attempt here to anticipate the various contexts in which this type of question may arise, but briefly draw attention to the consistency between RCW 7.72.050 and RCW 7.72.030.

Turning to the case at hand, we agree with the Court of Appeals that the instructions in this case constituted prejudicial error because they allowed the jury to apply an ordinary negligence standard to a design defect claim.

Instructions, when read as a whole, must allow counsel to argue their theory of the case, must not be misleading, and must properly inform the trier of fact of the applicable law. *Caruso v. Local Union 690, Int'l Bhd. of Teamsters,* 107 Wn.2d 524, 529, 730 P.2d 1299, *cert. denied,* 484 U.S. 815, 98 L. Ed. 2d 31, 108 S. Ct. 67 (1987); *Gammon v. Clark Equip. Co.,* 104 Wn.2d 613, 617, 707 P.2d 685 (1985). Because the term "negligence" appeared in the design defect instruction, instruction 11A, and in the general negligence instructions, the jury may have considered the general negligence instructions when attempting to apply the design defect instruction in this case. Nothing in the

instructions limited application of the general negligence instructions.

The instructional problem was exacerbated by defense counsel's closing argument. During that argument, counsel referred to instruction 10 (failure to warn) and instruction 11A (design defect) and said:

> Both of these instructions require you to find negligence, and negligence is defined as, "the failure to exercise ordinary care," which is the care that a reasonably careful person would not do under the same or similar circumstances.

Closing Arguments by Defendants, vol. 5, at 8–9.

> Now I don't want to get ahead of myself. We will look at instruction 11A. Same thing. They have to prove that the defendants were negligent, and that involves showing that their negligence related to not making a change in their product, and their claim is having asbestos as a component in their product.
> . . . In order to recover under either theory, they have to establish that negligence in terms of the likelihood that that product would cause this disease.

Closing Arguments by Defendants, vol. 5, at 16.

■ This argument tells the jury to apply the general negligence instructions to a design defect claim. Counsel's argument conforming to the instructions, along with the instructions themselves, were prejudicial to plaintiffs. The jury could well have applied the general negligence instructions and determined only that the manufacturers acted reasonably under the circumstances, regardless of the required focus on whether the products were not reasonably safe. The Court of Appeals correctly reasoned that the instructions, taken as a whole, were misleading and allowed the jury to misapply the law. Reversal is therefore in order. *See Price v. Department of Labor & Indus.*, 101 Wn.2d 520, 528–29, 682 P.2d 307 (1984); *State v. Wanrow*, 88 Wn.2d 221, 236–37, 559 P.2d 548 (1977).

The Court of Appeals further held that instruction 11A, standing alone, was erroneous because the reference in the instruction to negligence was likely to confuse the ordinary, reasonable juror. Therefore, the Court of Appeals held, instruction 11A alone was misleading and invited the jury to misapply the law.

We disagree with this conclusion. The statute specifically informs the jury as to what is meant by the term "negligence of the manufacturer". The "negligence" of the manufacturer is only found "*in that* the product was not reasonably safe". (Italics ours.) A design defect instruction in this language of the statute is not erroneous, in and of itself. However, we note that the new version of WPI 110.02 (1989) deletes the word "negligence" altogether.[4] We view that deletion as appropriate and preferable. Care must be taken not to impart the common law notion of negligence into this type of case. Had the term "negligence" been deleted from instruction 11A, the remainder of the instruction would not thereby have been rendered erroneous. As we have explained, the statute defines the standard for liability, and an instruction accurately reflecting that standard will adequately inform the jury of what it must find before a manufacturer is liable. Deleting the word "negligence" does not alter that standard.

■ Finally, we address whether the questions we have decided are properly before us. As to the issue whether instruction 11A standing alone misstated the law: Counsel must state distinctly the matter to which he objects and the

---

[4]WPI 110.02 (1989) states:

"A manufacturer has a duty to design products which are reasonably safe. A manufacturer is subject to liability if the product was not reasonably safe as designed at the time it left the manufacturer's control and this was a proximate cause of the plaintiff's [injury] [and] [or] [damage].

"A product is not reasonably safe as designed, if:

"[at the time of manufacture, the likelihood that the product would cause injury or damage similar to that claimed by the claimant, and the seriousness of such injury or damage, outweighed the burden on the manufacturer to design a product that would have prevented the injury or damage and outweighed the adverse effect that an alternative design that was practical and feasible would have on the usefulness of the product;] [or]

"[the product is unsafe to an extent beyond that which would be contemplated by an ordinary user. In determining what an ordinary user would reasonably expect, you should consider [the relative cost of the product] [the seriousness of the potential harm from the claimed defect] [the cost and feasibility of eliminating or minimizing the risk] [and] such [other] factors as the nature of the product and the claimed defect indicate are appropriate.]

grounds for that objection. CR 51(f); *Nelson v. Mueller,* 85 Wn.2d 234, 237, 533 P.2d 383 (1975). The trial court must be adequately informed of the claimed error in order to correct any error before the case goes to trial. *Stewart v. State,* 92 Wn.2d 285, 298, 597 P.2d 101 (1979). While Falk did not state on the record a specific exception to instruction 11A, his objection to the failure to give proposed instruction 25[5] on design defect liability clearly apprised the trial court of the point of law in dispute, *i.e.,* whether an instruction in the "negligence" language of the statute misstated the law. Falk argued to the trial court that strict liability, as it existed before the tort reform act, was still the correct standard. It was clear that Falk's position was that his proposed instruction correctly stated the law in terms of strict liability, and that an instruction in the terms of the statute did not. This issue is properly before us. *See Mutual of Enumclaw Ins. Co. v. Cox,* 110 Wn.2d 643, 651–52, 757 P.2d 499 (1988).

With regard to the propriety of giving ordinary negligence instructions along with instruction 11A: This issue was not raised at the trial court level. Moreover, it was inadequately addressed in Falk's brief. Although not entirely clear from the record, it appears that Falk believed the negligence instructions were relevant to his failure to warn claim.

Despite Falk's failure to raise and preserve a claim of error, the Court of Appeals nevertheless reached the issue

---

[5]Proposed instruction 25 provided:

"A product is not reasonably safe as designed, if, at the time of manufacture, it is unsafe as designed to an extent beyond that which would be contemplated by the ordinary user, or if the likelihood that the product would cause injury or damage and the seriousness of the injury or damage, outweighed the burden on the manufacturer to design a product that would have prevented the injury or *damage* and outweighed the adverse effect that an alternate design that was practical and feasible would have on the usefulness of the product.

"In determining what an ordinary user would reasonably expect, you should consider the relative cost of the product, the cost and feasibility of eliminating or minimizing the risk, the circumstances and conditions under which the products will normally be used, and such other factors as the nature of the product and the claimed defect indicate are appropriate." Clerk's Papers, at 343.

of whether giving instruction 11A in conjunction with the instructions on common law negligence constituted error. The court reasoned that the trial court was fully aware of the nature of Falk's objection and that an objection would have been futile. However, the trial court could not have been aware of the nature of an objection never made. Moreover, we do not think the record supports the Court of Appeals' belief that an objection would have been futile; in any event, this is not a standard we apply in determining whether issues are properly before an appellate court.

■ Nevertheless, we conclude that the Court of Appeals did not err by reaching the issue, and it is properly before us. At the heart of this case is the question whether strict liability is still the standard for design defect claims. Necessarily involved is the further question of what the term "negligence" in the statute means. Addressing only the propriety of instruction 11A would not adequately resolve the crucial issue in the case—the extent to which, if at all, negligence principles have supplanted strict liability principles in design defect product liability actions. An appellate court has inherent authority to consider issues which the parties have not raised if doing so is necessary to a proper decision. *Alverado v. WPPSS,* 111 Wn.2d 424, 429, 759 P.2d 427 (1988); *see Siegler v. Kuhlman,* 81 Wn.2d 448, 502 P.2d 1181 (1972), *cert. denied,* 411 U.S. 983 (1973); RAP 12.1(b); *Hall v. American Nat'l Plastics, Inc.,* 73 Wn.2d 203, 205, 437 P.2d 693 (1968) (courts decide crucial issues which the parties have failed to present). While the appellate courts in this state usually call for additional briefing in such cases, *see* RAP 12.1(b), additional briefing is not always necessary. *See Alverado,* at 430. In this case, additional briefing was not needed because the nature of a design defect claim, following the tort reform act of 1981, was addressed by the parties in the context of claimed error in instruction 11A.

Petitioner Eagle–Picher Industries maintains, however, that Falk waived any complaint about instructional error because he failed to except to instructions 15 and 16, which

used the term "negligence" to apply to both his design defect and failure to warn claims, and because he proposed a special verdict form identical to the one provided to the jury, which asked whether any defendant was negligent in that its products were not reasonably safe as designed. Clerk's Papers, at 243, 348.

As we have explained, the Court of Appeals properly reached the issue of whether giving other negligence instructions in conjunction with instruction 11A was error, even though Falk did not properly raise the issue. This conclusion effectively nullifies the waiver argument.

The Court of Appeals is affirmed as to its holding that giving instruction 11A in conjunction with instructions on common law negligence constituted reversible error.[6] This case is remanded for retrial in accordance with the principles expressed herein.

UTTER, DORE, PEARSON, DURHAM, and SMITH, JJ., concur.
ANDERSEN, J., concurs in the result.

CALLOW, C.J. (concurring in the result)—The majority holds that a manufacturer's product is defectively designed within the meaning of RCW 7.72.030 either if its hazards outweigh its utility *or* if it is unsafe in the contemplation of the reasonable consumer. The language of RCW 7.72.030 provides only for the former standard.

---

[6]We note that the Court of Appeals also believed instruction 11A improperly placed the burden on the plaintiffs to prove that there was a reasonably safe alternative design. *Falk v. Keene Corp.*, 53 Wn. App. 238, 245 n.5, 767 P.2d 576 (1989). The instructional language on alternative design is essentially in the terms of RCW 7.72.030(1)(a). We held in *Couch v. Mine Safety Appliances Co.*, 107 Wn.2d 232, 728 P.2d 585 (1986), that a plaintiff is not required by the statute to prove the existence of an alternative design. *Couch*, at 239; *cf. Connor v. Skagit Corp.*, 99 Wn.2d 709, 715, 664 P.2d 1208 (1983) (decided before tort reform act of 1981). Contrary to the Court of Appeals' view, an instruction in the language of the statute does not place a burden on plaintiffs to prove the existence of a reasonably safe alternative design. Instruction 11A simply allowed evidence of alternative safe design to be weighed in the balance of proving the reasonable safety of a design.

I

*Seattle–First Nat'l Bank v. Tabert,* 86 Wn.2d 145, 149, 542 P.2d 774 (1975) held that strict liability principles applied to design defect claims. Reasoning that an "unreasonably dangerous" product is "necessarily defective," the court held that a product is unreasonably dangerous if it is:

unsafe to an extent beyond that which would be reasonably contemplated by the ordinary consumer. . . .

In determining the reasonable expectations of the ordinary consumer, a number of factors must be considered. The relative cost of the product, the gravity of the potential harm from the claimed defect and the cost and feasibility of eliminating or minimizing the risk *may* be relevant in a particular case.

(Italics mine.) *Tabert,* at 154. Prior to the enactment of RCW 7.72.030, the trier of fact could, but did not have to, balance the risk and gravity of potential harm against the feasibility and cost of eliminating a defect. The ultimate issue in a design defect case was the ordinary consumer's reasonable expectations. *Lenhardt v. Ford Motor Co.,* 102 Wn.2d 208, 683 P.2d 1097, 40 A.L.R.4th 609 (1984); *Connor v. Skagit Corp.,* 99 Wn.2d 709, 715, 664 P.2d 1208 (1983).

The 1981 tort reform act changed this hierarchy. RCW 7.72.030(1)(a) alters *Tabert*'s definition of an unsafe product:

A product is not reasonably safe as designed, if, at the time of manufacture, the likelihood that the product would cause the claimant's harm or similar harms, and the seriousness of those harms, outweighed the burden on the manufacturer to design a product that would have prevented those harms and the adverse effect that an alternative design that was practical and feasible would have on the usefulness of the product[.]

RCW 7.72.030(3) provides that consumer expectations are a factor, but only a factor, to be considered in determining whether a product is unsafe:

In determining whether a product was not reasonably safe under this section, the trier of fact shall consider whether the product was unsafe to an extent beyond that which would be contemplated by the ordinary consumer.

The plain language of RCW 7.72.030(3) clearly indicates that the ordinary consumer's expectations are no longer the *ultimate* issue in a defective design case. Rather, consumer

expectations are now evidence for the trier of fact to consider, along with all the other relevant evidence in the case, in determining what the Legislature has framed as the ultimate issue—whether a product's hazards outweigh its utility.

The majority opinion violates the plain meaning of this legislative enactment by maintaining consumer expectations as an alternate basis for imposing liability. According to the majority, *even though a product is "reasonably safe as designed"* under the criteria set forth by the Legislature in RCW 7.72.030(1)(a):

> the plaintiff may nevertheless establish manufacturer liability by showing the product was unsafe to an extent beyond that which would be contemplated by the ordinary consumer. RCW 7.72.030(3). If the product design results in a product which does not satisfy this consumer expectations standard, then the product is not reasonably safe.

Majority opinion, at 654. The majority endeavors to support this "interpretation" by pointing to its alleged consistency with RCW 7.72.050(1), which provides for the admissibility of evidence of industry custom, technological feasibility, and legislative, administrative, or nongovernmental standards:

> [T]his evidence will often be relevant to that which is reasonable for an ordinary consumer to expect in the way of product safety. In this regard, we adhere to our requirement in *Tabert* that the expectations of the consumer must be the *reasonable* expectations of the ordinary consumer.

Majority opinion, at 655.

What *Tabert* once held is not what the tort reform act now says. RCW 7.72.030(3) requires the trier of fact to consider "whether the product was unsafe to an extent beyond that which would be contemplated by the ordinary consumer." The statute does not reference a consumer's *reasonable* expectations or ask what a *reasonable* consumer should have expected, but focuses on what an ordinary consumer in fact *would* have expected. The Legislature has not put the word "reasonable" in this statute.

In sum, the current language of RCW 7.72.030 shows that the Legislature intended to make risk–utility balancing the ultimate issue in product liability design defect actions. The expectations of the ordinary consumer are merely a factor for the trier of fact to consider in striking this balance, not an alternative basis for imposing liability.

## II

I do agree, however, with the majority's conclusion that the Legislature did not intend to adopt common law negligence as the standard for design defects. Although a design defect claim is "akin to negligence," *Couch v. Mine Safety Appliances Co.,* 107 Wn.2d 232, 239 n.5, 728 P.2d 585 (1986) (quoting Senate Journal, 47th Legislature (1981), at 624) (in the sense that it requires the trier of fact to balance risk against utility), a design defect claim significantly differs from an ordinary negligence claim in another important respect.

If design defects were evaluated under ordinary negligence principles, the trier of fact would have considered the reasonableness of the manufacturer's conduct in light of the circumstances as the manufacturer reasonably understood them to be at the time. RCW 7.72.030(1)(a) instead requires that a product's safety be evaluated by an objective, rather than a subjective, standard.

RCW 7.72.030(1)(a) does not refer to the reasonableness of the manufacturer's conduct. The statute defines a reasonably safe product in light of what was technologically feasible at the time, rather than in light of what technological expertise a manufacturer possessed. The Legislature thus retained the pre–tort reform rule that "the reasonableness of the defendant's *conduct* is irrelevant". (Italics mine.) *Lenhardt,* 102 Wn.2d at 213. The statute instead holds manufacturers to a more stringent "state of the art" standard of liability.

Comparison of this section with RCW 7.72.030(1)(c) indicates that the Legislature intended to adopt an objective "state of the art" standard of liability. RCW 7.72-.030(1)(c) provides:

A product is not reasonably safe because adequate warnings or instructions were not provided after the product was manufactured where a manufacturer learned *or where a reasonably prudent manufacturer should have learned* about a danger connected with the product after it was manufactured. In such a case, the manufacturer is under a duty to act with regard to issuing warnings or instructions concerning the danger in the manner that *a reasonably prudent manufacturer would act* in the same or similar circumstances. This duty is satisfied if the manufacturer exercises *reasonable care* to inform product users.

(Italics mine.) As the emphasized language clearly indicates, the Legislature knew how to apply a subjective negligence standard when it desired to do so.

Moreover, this interpretation harmonizes the various standards of product liability set forth in RCW 7.72.030. In RCW 7.72.030(2), the Legislature imposed absolute liability for harms caused by defectively manufactured products. In RCW 7.72.030(1)(a) and (1)(b), the Legislature imposed strict liability for defectively designed or labeled products. Finally, in RCW 7.72.030(1)(c), the Legislature imposed negligence liability for failing to warn of dangers discovered after product manufacture. Interpreting the sections of RCW 7.72.030 according to their plain meaning results in a unified, rational system of product liability.

### III

In the present case, the trial court instructed the jury that the manufacturer was liable "if the claimant's harm was proximately caused by the *negligence* of the manufacturer in that the product was not reasonably safe as designed at the time it left the manufacturer's control." The court further instructed the jury that negligence consisted of "the doing of some act which a reasonably careful person would not do *under the same or similar circumstances . . .*"

These instructions, considered together, permitted the jury to evaluate the the reasonableness of the manufacturer's conduct, rather than weigh the hazards and utility of the manufacturer's product. The jury could have found that although the product was objectively unsafe, the manufacturer's conduct, viewed subjectively from the manufacturer's perspective, was reasonable. I therefore agree with the majority's conclusion that the giving of these instructions constituted error. The judgment should be reversed and the case remanded for retrial.

DOLLIVER, J., concurs with CALLOW, C.J.